In re General Election of Nov. 4, 1975 (No. 1)

*Marshall E. Anders, Andrew Maier* and *Sidney L. Krawitz,* of *Krawitz, Sigal & Ridley,* for contestant.

*John Stich* and *Robert Kayton*, of *Kayton, Schneider, Davis & Levy*, contra.

WILLIAMS, *P.J.*, December 18, 1975.—At the municipal election held on November 4, 1975, three persons were to be elected as Commissioners of the County of Pike. There were four candidates for that office. The Democrat Party candidates were James Duffy and Harlan James Crellin. The Republican candidates were Warner Depuy and George Coutts. Each voter was privileged to vote for any two of the four candidates.

In Shohola Township, the voting was by voting machine. The official return by the township election board showed the following results:

*Voting Machine*

| | |
|---|---|
| James Duffy | 297 |
| Warner Depuy | 148 |
| George Coutts | 89 |
| Harlan James Crellin | 18 |

*Absentee Ballots*

| | |
|---|---|
| James Duffy | 21 |
| Harlan James Crellin | 5 |
| George Coutts | 9 |
| Warner Depuy | 14 |

The County-wide result was:

| | |
|---|---|
| Warner Depuy | 3019 |
| James Duffy | 2910 |
| George Coutts | 2384 |
| Harlan James Crellin | 2338 |

On November 13, 1975, an election contest petition was filed in behalf of Harlan James Crellin. On November 21, 1975, a motion to quash the election

contest petition was filed. It appears that a request to fix bond was presented to Judge Marsh who did not fix the bond.

It appears from the notes of testimony of a hearing held on November 24, 1975, that Mr. Krawitz, acting as attorney for Mr. Crellin, addressed Judge Marsh on the matter of fixing the amount of the bond. He stated that the petition to contest the election was filed within the statutory period of 20 days. He further stated: "Although the Court decided it wasn't going to fix any bond at that time, since that time we have been served by a petition to quash because we haven't filed a bond. We don't want to get into that position where we have waived any rights because of our filing."

The record then shows the following:

"THE COURT: You can file as of today.

"MR. KRAWITZ: Does the Court want to fix bond?

"THE COURT: I didn't know that they did. I didn't know they fixed any bond. I thought they would be filed with Judge Williams."

Following this colloquy, a petition identical with the original petition was filed in the prothonotary's office on November 24, 1975, at 5:46 p.m.

On November 25, 1975, with counsel for both sides present at his chambers in Stroudsburg, Judge Williams fixed bond at $500 and bond was filed the next day, November 26, 1975

Counsel for Mr. Coutts, then filed a motion to quash contest petition filed on November 24, 1975.

## OBJECTIONS TO THE FIRST PETITION

(1) The petition is insufficient in that it did not allege either an illegal act or glaring fraud.

(2) The petition does not state where the election was illegal.

(3) No bond, signed by at least five of the petitioners, was filed within the required statutory period.

(4) A judge may not sit as an election board. This objection was not argued in respondents' written brief. Neither was it raised in oral argument and is deemed abandoned.

## OBJECTIONS TO SECOND PETITION
## FOR ELECTION CONTEST

(1) The Board of Elections lacked authority to grant petitioners leave to file a second contest petition.

(2) The second petition was not timely filed in the office of the prothonotary, in that it was received after the regular business hours.

(3) The doctrine of pending prior suit prohibits the filing of a second petition.

(4) The second petition is not an amendment to the first petition.

(5) The petition fails to specify how and in what manner or in what particular, if any, the Election Code was violated.

## ALLEGATIONS IN PETITION
## FOR ELECTION CONTEST

(1) The 25 individuals who filed the petition averred:

"6. That your petitioners went to the Shohola Township Fire House on November 4, 1975 and voted in said election.

"7. That your petitioners all voted for Harlan James Crellin for County Commissioner of Pike

County, thus casting twenty-five (25) votes on the said voting machine for Harlan James Crellin.

"8. That on (2) occasions during the voting hours on November 4, 1975, the voting machine used in Shohola Township did malfunction and fail to operate.

"10. That during the said unofficial canvass of the voters of Shohola Township, *89* registered voters did execute affidavits setting forth that they voted for Harlan James Crellin for County Commissioner of Pike County on the voting machine used in Shohola Township during the election held on November 4, 1975. The true and correct copies of the said affidavits being attached hereto and made a part hereof.

"11. That your petitioners are of the information and belief that the voting machine used in Shohola Township during said election did malfunction or operate improperly due to human error or mechanical defect.

"12. That due to the improper operation of the said voting machine, your petitioners are of the information and belief that the said voting machine failed to correctly record the number of votes cast in Shohola Township for Harlan James Crellin for the office of County Commissioner of Pike County.

"13. That the official results of the aforesaid election for the offices (three) of County Commissioner of Pike County were as follows:

| "Warner Depuy (R) | 3019 |
| James Duffy (D) | 2910 |
| George M. Coutts (R) | 2384 |
| Harlan James Crellin (D) | 2338 |

"14. That if the said voting machine used in Shohola Township had been operating properly,

your petitioners are of the information and belief that Harlan James Crellin would have received an additional 71 votes in Shohola Township, Pike County, Pennsylvania for the office of County Commissioner.

"15. That if the said machine used in Shohola Township had properly recorded the votes cast for Harlan James Crellin, for the office of County Commissioner of Pike County, Harlan James Crellin would have received at least 2409 votes for the said office and Harlan James Crellin would have been elected to the office of County Commissioner of Pike County receiving twenty-five (25) more votes for the office than George M. Coutts.

"16. That for the reasons set forth hereinabove, your petitioners believe that the return of a total of 2338 votes in favor of Harlan James Crellin for the office of County Commissioner is a false return and that the election of the said George M. Coutts was improper and therefore, your petitioners contest the right of George M. Coutts to the said office.

"17. That for the reasons set forth above, Harlan James Crellin was duly elected to the said office and not George M. Coutts who was returned as such."

*Was the filing of the petition for contest of election on November 24, 1975, at 5:46 p.m. untimely?*

Counsel for respondent argue that the election petition filed on November 24, 1975, at 5:46 p.m., was untimely in that it was not filed within the ordinary business hours of the Prothonotary. It is contended that under the Act of June 3, 1937, P. L. 1333, art. I sec. 103(e), 25 PS §2603(e), which provides:

"(e) In determining or reckoning any period of time mentioned in this act, the day upon which the act is done, paper filed, or notice given, shall be

excluded from, and the date of the primary, election, hearing or other subsequent event, as the case may be, shall be included in the calculation or reckoning: Provided, however, That if the last day upon which any act may be done, paper filed, or notice given, shall fall on a Sunday or a legal holiday, the next following ordinary business day shall be considered as the last day for said purpose. 1937, June 3, P. L. 1333, art. I, §103."

It is argued that to be filed timely, the petition had to be filed within the time fixed by the commissioners that the courthouse shall be open, which hours had been fixed to be Monday through Friday, 8:30 a.m. to noon and 1 p.m. until 4 p.m.

We find nothing in 25 PS §2603(e) which requires the aforesaid petition to be filed within any specified hours of the day. All section 2603(e) of the Election Code states is "provided however, That if the last day upon which any act may be done, paper filed, or notice given, shall fall on a Sunday or a legal holiday, the next ordinary business day shall be considered the last day for said purpose." The act cannot be construed as limiting the hours within which the petition may be filed. The expression "ordinary business day" is used to distinguish such a day from a Sunday or legal holiday when the prothonotary's office would be closed.

Moreover, the argument overlooks the fact that under the law, as stated by the Pennsylvania Superior Court in Smith v. Safeguard Mutual Insurance Company, 212 Pa. Superior Ct. 83, 86, 239 A.2d 824 (1968): "The prothonotary is merely the clerk of the court of common pleas." As such, he is under the jurisdiction of the court and not the county commissioners. The minutes of the Court of Common Pleas show that this court was in session

on November 24, 1975, until 5:45 p.m. It was the duty of the prothonotary to be open as long as the court was in session and attend to his duty as clerk of court. The prothonotary was properly present, serving in the capacity of clerk of the court. At the time of the filing of the petition, the office was legally open and the filing of the petition was accordingly within the statutory limits.

*Should the first petition be quashed because of the failure to file a bond?*

The contest petition was originally filed November 13, 1975. On the same day, a petition to fix bond was filed but never acted upon by the court. We agree that time elements required by the Election Code must be strictly enforced. We further agree that, under ordinary circumstances, the failure to file a bond is fatal to the validity of the contest proceeding. However, there are present here some unusual circumstances. A request to fix bond was presented to the court within the statutory time. Judge Marsh did not act upon it. As stated earlier, he understood it was to be presented to the writer of this opinion as President Judge of the court for action upon it. There was no lack of diligence on the part of counsel in requesting that the amount of the bond be fixed by the court. While we agree that the court is generally without authority to extend the time for filing any proceeding beyond the statutory period, yet it is also true if the delay is induced by some breakdown in the court's operation, the court does have the power to extend the statutory period. See Nixon v. Nixon, 329 Pa. 256, 259, 260, 198 Atl. 154, 157 (1938).

Under the circumstances here present, it would be manifestly unfair to petitioners to summarily quash their petition without first holding an

evidentiary hearing to determine whether the cause of the delay was due to the inaction of petitioners, or was it due to a breakdown in the court's operation.

However, in light of the events which followed the original filing of the petition, we think the issue has become moot. Respondents argue that petitioners should have brought mandamus proceedings to force the court to fix the amount of the bond within the statutory period. We consider such a move on the part of petitioners to be impractical because the time period was too short in which to act. We also see with what reluctance an attorney would move for a writ of mandamus against a judge, particularly where petitioners had the alternative remedy of refiling the petition.

The request to fix the amount of the bond was made to the writer of this opinion on November 25, 1975. On that day, the amount was fixed and the bond was filed on November 26, 1975.

We agree that the petition filed November 24, 1975, was not an amendment of the petition filed on November 13, 1975, since it was an exact duplicate of the first petition. Whether or not the court had the authority to grant leave to file the petition on November 24, 1975, is immaterial. Petitioners had the absolute statutory right to contest the election within the statutory period. November 24, 1975, was the last day such petition could be legally filed. Counsel for petitioner advised the court on November 24, 1975, of his concern that his request to fix bond had not been acted upon. To obviate any problem, he refiled his petition on November 24, 1975, after being told by the court, "You can file as of today." The amount of the bond was fixed on November 25, 1975, and the bond filed the next

day. Thus, the time requirements of the Election Code were satisfied.

We have not found, nor has counsel referred us to, any appellate or lower court case which has passed upon the particular circumstances before us. The facts are unique which likely explains such lack of legal precedents.

We conclude that petitioners could perfect their election contest petition by refiling it within the required statutory period without leave of court and without a formal withdrawal of their first petition. We think it would be unjust to rule otherwise under the unusual circumstances here present. We do not find any evidence of dilatory action on the part of counsel for petitioners. They acted promptly to have the amount of the bond fixed after the original filing of their contest petition. When this was not done, they acted alertly to overcome the possible quashing of the original filing, by refiling the petition within the statutory period. Neither do we see any prejudice to respondents in such a ruling. If the petition was filed for the first time on November 24, 1975, they could not properly object to the filing date.

## THE OBJECTION OF FORMER SUIT PENDING

In civil actions under Pa. R.C.P. 1017(b) (5), respondents may, by preliminary objection, raise the defense of a prior pending suit. We do not believe that doctrine is applicable to the circumstances here present. The contest petition filed November 24, 1975, was identical with the one filed on November 13, 1975, and for that reason there was, in fact, but one election contest instituted and not two.

We liken this situation to the one where under Pa.

R.C.P. 1009(a) a complaint must be served within 30 days of filing or issuance. When service has not been accomplished within the required time period, the situation may be remedied by resort to Rule 1010(a) which provides:

"(a) The prothonotary, upon praecipe and upon presentation of the writ or the complaint, shall continue its validity by reissuing the writ, or reinstating the complaint, by writing thereon 'reissued,' in the case of a writ, or 'reinstated' in the case of a complaint."

When Judge Marsh stated to Mr. Krawitz, "You can files *as of today,*" he was in effect reinstating the contest petition as of November 24, 1975, which was within the required statutory period.

### THE SUFFICIENCY OF THE PETITION

Section 3456 (25 PS 3456) of the Election Code provides, in part:

"The petition shall concisely set forth the cause of the complaint, showing wherein it is claimed that the primary or election is illegal, and after filing may be amended with leave of court, so as to include additional specifications."

Respondents argue that the allegations in the petition are insufficient because it fails (a) to specify how and in what particular, if any, the Election Code was violated; (b) it fails to show in what manner the voting machine malfunctioned or operated improperly; (c) petitioners have failed to comply with section 1756 of the Election Code because they have failed to "aver plainly and distinctly the basis on which they predicate their contest."

In Madigan Appeal, 434 Pa. 361, 364, 253 A. 2d 271 (1969), after quoting section 1756 of the Election Code, said:

"While it is true that the provisions set forth above are to be construed liberally and a petition for contest is not to be declared legally insufficient merely because it fails to include or to detail the evidence supporting the allegation of illegality in the election, still it is absolutely essential that such petition 'aver plainly and distinctly such facts which if sustained by proof would require the court to set aside the result'."

The allegations in the contest petition do not charge fraud or misconduct on the part of any one. It alleges that the voting machine malfunctioned; that on two occasions during voting hours, the machine malfunctioned and failed to operate; that 89 residents of Shohola Township had executed affidavits to the effect that they voted on said machine and voted for Harlan James Crellin; that the machine recorded 18 votes for Harlan James Crellin although 89 people say they voted for him; that the countywide returns by the various municipal election boards gave George Coutts a plurality of 46 votes; that due to the improper operation of the machine, it failed to record the number of votes cast for Harlan James Crellin; that 71 votes for Crellin were not recorded by the machine; that had the machine recorded all votes cast for Crellin, he would have received a plurality of 25 votes and that he was elected to the office of county commissioner.

There is no doubt that the allegations in the petition, if properly proven, would change the result of the election and thus satisfies the requirement that if such allegations were sustained by proof, it would require the court to change the result of the election. We are here concerned only with the sufficiency of the allegations. We are in no way ruling upon whether the results of the election may be

changed by the oral testimony of voters as to how they voted at the election. This is a grave and complex question which is not presently before us. We are here dealing only with the issue as to whether the petition makes out a prima facie case.

It is the contention of respondents that the petition is in noncompliance because it does not set forth glaring fraud or illegality. Petitioners do not dispute that their position is based solely on error in recording the number of votes cast for Crellin. They do not allege illegality in the sense that any one was guilty of misconduct. It, therefore, becomes necessary to decide whether an Election Contest may be heard based solely on the allegation that the malfunction of a voting machine allegedly caused a failure to record all votes cast for Crellin.

We again point out that we are here dealing only with the question of the sufficiency of the pleadings and not the kind of evidence required to sustain the allegations in the pleadings.

Our first observation is that any candidate for office who is deprived of that office due to the malfunction of a voting machine is as unjustly hurt as he would have been if deprived of the office because of fraud or misconduct of others. It would be a strange justice which says he may lawfully be deprived of office because the circumstances were produced unintentionally and not by some deliberate misdeed.

In Miller Election Contest Case, 351 Pa. 469, 471, 41 A. 2d 661 (1945), it is said:

"The contest of an election is a remedy given to the people when the expression of their choice of a public officer has been frustrated by fraud *or mistake*." (Emphasis supplied.)

Respondents' counsel argued that statements re-

ferring to "mistake" appearing in Supreme Court cases are dicta and, therefore, not controlling. Counsel for petitioners admit that such expressions are dicta, since the circumstances before the court showed fraud or illegality and not error or mistake.

The weight that dicta should be given in deciding issues, is set forth at length in Pew Trust, 411 Pa. 96, 104, 191 A.2d 399 (1963). There, the Supreme Court stated:

"Dictum which is contained in an Opinion and not in a footnote, is sometimes as strong and controlling as a decision on the merits; indeed, Opinions containing dicta are sometimes more carefully and thoroughly considered than some Opinions which are restricted solely to the merits, and others which are 'Per Curiam.' There are many outstanding examples of the decisive effect of dicta. Probably the leading case in all the legal history of Pennsylvania is Commonwealth v. Drum, 58 Pa. 9—yet few realize that the court's opinion in Commonwealth v. Drum was purely dicta. Nirdlinger's Estate, 390 Pa. 457, 139 A. 200, and Waterhouse's Estate, 308 Pa. 422, 162 A. 295, are other striking examples where the Court wisely set up, by dicta, clear guideposts which were intended to be followed and were followed by this Court for very many years."

In light of such a statement, this court should, at the least, give great weight to the dicta which permits an election contest based upon an allegation of error. We accept this dicta because we believe that it states the position of the Supreme Court on the issue before us. Moreover, we believe it expresses the intent of the Election Code.

Section 3154(d)(2) of the Election Code (25 PS §3154), provides:

"In districts in which voting machines have been used when the records agree with the returns regarding the number registered on the voting machine, the votes recorded for each candidate shall be read by the clerk slowly, audibly, and in an orderly manner from the general return sheet which has been returned unsealed, and the figures announced shall be compared by other clerks with the duplicate return sheet which has been returned sealed, and if the voting machine is of the type equipped with mechanism for printing paper proof sheets, said general and duplicate return sheets shall also be compared with said proof sheets, which have been returned as aforesaid. If any discrepancies are discovered, the county board shall thereupon examine all the return sheets, proof sheets and other papers in its possession relating to the same election district. The said proof sheets shall be deemed to be the primary evidence of the result of the election and to be prima facie accurate, and if the proper proof sheets, properly identified, shall be mutually consistent, and if the general and duplicate returns, or either of them, from said district shall not correspond with said proof sheets, they shall be corrected so as to correspond with same, *in the absence of allegation of specific fraud or error*, proved to the satisfaction of the county board.

"(3) *If any error* or fraud is discovered, the *county board shall compute and certify* the votes justly regardless of any fraudulent *or erroneous returns* presented to it, and shall report the facts to the district attorney." (Emphasis supplied.)

It is clear that the legislature contemplated that if error is found, that it be corrected. Although section

3154(d) (2) refers to the duty of the election board and not the court, the same duty lies with this court to see that the votes be justly computed where either fraud or error is shown.

In light of what has been said in this opinion, we enter the following:

## ORDER

And now, December 18, 1975, the motions to quash the election contest petition filed on November 13, 1975, and the duplicate thereof, filed on November 24, 1975, are denied and both motions are dismissed.