# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Primary Election of  :
May 15, 2018  :
   :
In Re:  Nomination of the  :
Democratic Candidate for the  :  Nos.  977 C.D. 2018 and
Office of Representative in the  :  1009 C.D. 2018
General Assembly From the  :  Submitted: July 26, 2018
197th Legislative District  :
   :
Appeal of:  Frederick Ramirez  :


**BEFORE:  HONORABLE ROBERT SIMPSON, Judge**
**HONORABLE P. KEVIN BROBSON, Judge**
**HONORABLE MICHAEL H. WOJCIK, Judge**


*OPINION NOT REPORTED*


**MEMORANDUM OPINION**
**BY JUDGE BROBSON**   **FILED:  August 7, 2018**


     This matter involves a petition to contest the results of the May 15, 2018 primary election for the Democratic Party nomination for representative of the General Assembly from the 197th Legislative District (Contest Petition), pursuant to Sections 1741 through 1759 of the Pennsylvania Election Code (Election Code), Act of June 3, 1937, P.L. 1333, 25 P.S. §§ 3401-3459.[1]  In this consolidated appeal, Appellant Frederick Ramirez (Ramirez) appeals from two orders of the Court of Common Pleas of Philadelphia County (trial court).  The first order, dated

---

[1] As an election law appeal, this matter is proceeding under Sections 258 and 412(c) of the Commonwealth Court's Internal Operating Procedures.

June 20, 2018, granted the oral motion of the successful candidate, Appellee Danilo Burgos (Burgos), to dismiss the Contest Petition due to Ramirez's failure to file the statutorily-required bond. The second order, dated July 13, 2018, denied Ramirez's request to pursue his appeal from the June 20, 2018 order *nunc pro tunc*. Also before the Court for disposition are the following applications for relief: (1) Ramirez's application for relief in the form of a motion pursuant to Pa. R.C.P. No. 205.4(e)(4)(ii) (Application for *Nunc Pro Tunc* Relief), seeking *nunc pro tunc* relief from this Court as to his notice of appeal of the trial court's June 20, 2018 order; and (2) Burgos's application for relief in the form of a motion to dismiss (Motion to Dismiss), requesting that the Court dismiss Ramirez's appeal for lack of standing, lack of jurisdiction, and untimeliness.

For the reasons set forth below, we hold that Ramirez's notice of appeal, filed electronically with the trial court on July 2, 2018, was timely filed. Accordingly, and for this reason only, we affirm the trial court's July 13, 2018 order, denying Ramirez the opportunity to appeal *nunc pro tunc*.[2] Consistent with this holding, we dismiss as moot Ramirez's application to this Court for *nunc pro tunc* relief. With respect to the trial court's June 20, 2018 order, in light of the peculiar facts in this case, we hold that the trial court erred in dismissing the Contest Petition on Burgos's oral motion under Section 1759 of the Election Code, 25 P.S. § 3459, and we remand the matter to the trial court for further proceedings. We also deny Burgos's Motion to Dismiss.

---

[2] We may affirm the trial court on any basis appearing in the record. *Kohl v. New Sewickley Twp. Zoning Hearing Bd.*, 108 A.3d 961, 973 n.12 (Pa. Cmwlth. 2015).

2

## I. BACKGROUND

Following the primary election on May 15, 2018, the Philadelphia Board of Elections (Board of Elections)[3] certified Burgos as the winner of the Democratic Party nomination with 1,308 votes. The Board of Elections certified Ramirez as having received 1,230 votes. Thereafter, on June 4, 2018, Ramirez attempted to filed the Contest Petition with the trial court. The trial court initially refused to accept the filing on jurisdictional grounds in error. It later accepted the filing and docketed the Contest Petition as of June 7, 2018. In the Contest Petition, Ramirez specifically averred that he was contesting the nomination of Burgos and further averred malfunctioning voting machines, irregularities, and voter intimidation in certain districts within the 19th Ward of the 197th Legislative District. Ramirez requested that results for certain divisions of the 19th Ward be cast aside and the remaining votes recomputed and that he be declared the winner of the nomination.

Although the Contest Petition did not name any other petitioners in either the caption or the body of the Contest Petition, additional individuals who identified themselves as "petitioners" and registered voters signed the Contest Petition pursuant to Section 1742 of the Election Code, 25 P.S. § 3402. (Reproduced Record (R.R.) at 14-18.) As required by Section 1757 of the Election Code, 25 P.S. § 3457, five of those additional individuals verified the Petition by signing an affidavit, which counsel referred to as a verification. (*Id.* at 19-23.) Ramirez did not sign or verify the Contest Petition. The Contest Petition also contained a certificate of service, certifying that, on June 4, 2018, the Contest Petition was filed

---

[3] The Board of Elections filed a notice of non-participation, advising the Court that the Board of Elections was not a party in the trial court proceedings and will not be participating in this matter but is an interested party in this litigation.

3

and served electronically via the trial court's electronic filing system and was also personally served upon Burgos. (*Id.* at 24.)

Along with the Petition, Ramirez provided the trial court with a proposed order, which provided:

### ORDER

**AND NOW**, this ____ day of _____, 2018, upon consideration of the Petition of Frederick Ramirez to Contest Election, pursuant to [Section 1741 of the Election Code,] 25 P.S. § 3401[,] it is hereby ORDERED AND DECREED:

1. A hearing to consider the Petition shall be held on June ___, 2018 commencing at _____ in Courtroom _____, Pennsylvania.

2. Petitioners shall serve a copy of the Petition and this Order on putative nominee for the Office of Pennsylvania House of Representative for the 197th District Danilo Burgos. Proof of service shall be promptly filled [sic] with the Prothonotary.

3. The Court further designates the sum of $_____ as the amount of the bond to be filed by the Petitioners, pursuant to 25 P.S. § 3459, with the Prothonotary of the Court of Common Pleas by June ____, 2018.

DATED:                           BY THE COURT


                           _____
                                             , J

(*Id.* at 9.)

The trial court judge issued a Rule to Show Cause order (Show Cause Order) dated June 13, 2018, but docketed on June 14, 2018. (*Id.* at 69.) The Show Cause Order directed "the Respondent and all interested parties" to show cause why the relief sought in the Contest Petition should not be granted. (*Id.*) It scheduled a

4

hearing on the Contest Petition for June 20, 2018, designating a time and location. It also directed "[t]he Petitioner" to serve the Contest Petition and the Rule to Show Cause on "Respondent and all interested parties or their attorneys **personally**." (*Id.* (emphasis in original).) The Show Cause Order did not establish a bond amount.

The trial court judge conducted the hearing on June 20, 2018. At the outset of the hearing, Burgos's counsel challenged the Contest Petition on a variety of bases, resulting in the trial court dismissing the Petition before hearing any evidence or a merits determination. Specifically, Burgos's counsel challenged the Contest Petition as lacking the requisite number of petitioners, because Section 1742 of the Election Code requires "at least twenty registered electors of . . . the legislative district" to petition the trial court in order for the trial court to hear the complaints of illegality or false return. He questioned whether the "petitioners" are Ramirez or whether the "petitioners" include some or all of the individuals who signed the Contest Petition and verifications attached to the Contest Petition. (*Id.* at 76-81.) Burgos's counsel directed the trial court to page 5 of the Contest Petition, which provides:

> WHEREFORE, the undersigned Petitioners under Section 1742 of the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 3402, believe the facts stated in the foregoing petition are true, that according to the best of their knowledge and belief, the primary election for the Democratic nomination for State Representative (197th District) was illegal and the return thereof not correct, and that the petition to contest the same is made in good faith.

(*Id.* at 14.) Underneath that paragraph, three individuals completed lines calling for the signature, the printed name, and the address, including the municipality, of the registered voter. The Contest Petition also includes page 9, which is the same as

page 5, except that it includes the signature and information for one additional individual. (*Id.* at 18.)

Burgos's counsel did not contest that the four individuals on pages 5 and 9 are "petitioners." Rather, he directed the trial court to pages 6-8 of the Contest Petition, which each contain six sets of lines, identical to the lines completed by the three petitioners on page 5. (*Id.* at 15-17.) On each of these three pages, six individuals completed the requested information. Pages 6-8, however, do not contain the "WHEREFORE" language set forth above. Burgos's counsel took the position that there was no proof that the eighteen individuals who signed those pages knew that they were verifying the Contest Petition under Section 1742 of the Election Code, because there was no proof that pages 6-8 were attached to the Contest Petition at the time the individuals signed them, and the pages did not contain the language set forth above. (*Id.* at 76-81.) The trial court overruled the objection. (*Id.* at 81.)

Burgos's counsel also challenged the timeliness of the Contest Petition, noting that the primary election was held on May 15, 2018, and that any petition to contest had to be filed within twenty days of the election—*i.e.*, by June 4, 2018. (*Id.* at 83-85.) He asserted that although Ramirez filed the Contest Petition on June 4, 2018, the trial court rejected the Contest Petition, and Ramirez refiled it on a later date, making it untimely. (*Id.*) The trial court overruled this objection, explaining that the confusion regarding the filing was the result of an administrative issue, and the trial court ultimately processed the Contest Petition. (*Id.* at 85.)

Finally, Burgos's counsel challenged the Contest Petition on the basis that Ramirez failed to comply with Section 1759 of the Election Code, which places a duty on the petitioners to file a bond within five days of filing a petition to contest

6

election and expressly provides that failure to file a bond shall result in the dismissal of the petition to contest election. (*Id.* at 85-104.) Burgos's counsel observed that the petitioners had neither filed a bond nor any motion requesting the trial court to set the bond amount.

Counsel for Ramirez responded that the proposed order attached to the Contest Petition requested the trial court to set the bond amount. When the trial court did not do so, Ramirez's counsel assumed that the trial court would set an amount for the bond at the hearing. (*Id.* at 86.) Counsel for Ramirez noted that he included the request for the bond in his proposed order accompanying the Contest Petition, but the trial court did not set the amount in its Show Cause Order. (*Id.* at 94-95.) Recognizing that the statutory period for filing the bond had technically passed, counsel for Ramirez asked the trial court to allow him to file the bond out of time, owing to the lack of any action by the trial court in setting the amount prior to the hearing. (*Id.* at 96.) The trial court, concluding that the filing of a bond within five days was a jurisdictional requirement, sustained the objection and dismissed the matter.[4]

Thereafter, Burgos's counsel placed two additional objections on the record in order to preserve the objections for purposes of appeal. Neither of the objections contended that Ramirez was not a petitioner or lacked standing.[5]

---

[4] In addition to the challenges discussed above, Burgos's counsel raised an objection based on lack of service, but the trial court overruled that objection, finding that Ramirez properly served Burgos. (R.R. at 73-76.) Furthermore, Burgos's counsel challenged the Contest Petition based on the verifications themselves, arguing that there is no proof that the notary verified the identity of the person signing the verification. (*Id.* at 81-83.) The trial court overruled this objection as well. (*Id.* at 83.)

[5] Burgos's counsel described the preserved objections as "failure in this case to sufficient claim and . . . lapse." (R.R. at 104.)

The trial court entered an order, dated June 20, 2018, but docketed on June 21, 2018, denying the Contest Petition. Ramirez filed a notice of appeal with the trial court on July 2, 2018. The trial court rejected the filing on July 3, 2018. Ramirez refiled the notice of appeal on July 3, 2018, and the trial court accepted it for filing on that date.

On July 5, 2018, Ramirez filed with the trial court a motion pursuant to Pa. R.C.P. No. 205.4(e)(4)(ii), requesting that the notice of appeal be accepted and filed *nunc pro tunc*. The motion avers that Jeremy A. Gunn, Esquire, represented Ramirez at the hearing on June 20, 2018. Attorney Gregory Harvey, co-counsel in this matter, contacted J. Matthew Wolfe, Esquire, about possible involvement in the matter. Attorney Wolfe reviewed the docket, noting the order and the strict ten-day deadline under Pa. R.A.P. 903 to appeal matters under the Election Code.[6] Attorney Harvey authorized Attorney Wolfe to file an entry of appearance and to file an appeal around 4:00 p.m., on July 2, 2018. Attorney Wolfe promptly filed an entry of appearance that the trial court confirmed and approved on July 2, 2018. Attorney Wolfe also promptly filed with the trial court a notice of appeal that the trial court confirmed that same day. The trial court, however, rejected the filing of the notice of appeal in the early afternoon of July 3, 2018, on the basis that the certificate of service was inadequate because it did not include the information of the trial court judge. Attorney Wolfe promptly corrected and refiled the notice of appeal, and the trial court accepted it that day. The motion also averred that Ramirez, through Attorney Wolfe, made a good faith effort to electronically file the notice of appeal by the July 2, 2018 deadline and demonstrated reasonable efforts pursuant to

---

[6] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.

8

Pa. R.C.P. No. 205.4(e)(4)(ii) to timely present and file the notice of appeal. By order dated July 13, 2018, the trial court denied Ramirez's motion.

Following the trial court's denial of *nunc pro tunc* relief, Ramirez filed a notice of appeal from the July 13, 2018 order, which Ramirez characterized as a collateral order under Pa. R.A.P. 313. On July 19, 2018, Burgos filed a petition for fees and costs, alleging bad faith.

On July 23, 2018, the trial court filed an opinion pursuant to Pa. R.A.P. 1925(a) (Rule 1925(a) Opinion). At the outset, the trial court noted that, at the hearing on June 20, 2018, counsel for Burgos moved for dismissal of Ramirez's Contest Petition on the basis that the trial court lacked jurisdiction to hear and adjudicate the contest. The trial court then opined that, regardless of the merits of the appeal, all issues raised on appeal should be dismissed because Ramirez's notice of appeal, filed on July 3, 2018, was untimely. With regard to the merits of the appeal, the trial court calculated the five-day period for filing a bond under Section 1759 of the Election Code from June 7, 2018 (*i.e.*, the date that the trial court docketed the Contest Petition), thereby establishing June 12, 2018, as the date by which the petitioners were required to file a bond. The trial court concluded that the petitioners failed to file a timely bond, advancing several reasons for this conclusion.

## II. ISSUES ON APPEAL

In his statement of issues to be presented on appeal, filed a day after the trial court issued its Rule 1925(a) Opinion, Ramirez identifies the issues for this Court's review as follows: (1) whether the trial court erred in dismissing his Contest Petition for failing to post a bond or request that the trial court set the amount of such bond; and (2) whether Ramirez acted in good faith and made reasonable efforts to timely file the notice of appeal in this matter, such that the appeal should be deemed

9

timely. We must also consider Ramirez's Application for *Nunc Pro Tunc* Relief, asserting the same factual basis for relief recited in the motion that Ramirez filed with the trial court on July 5, 2018, and Burgos's Motion to Dismiss, requesting that the Court dismiss the appeals due to Ramirez's lack of standing, lack of this Court's jurisdiction, and the untimeliness of the appeals.

## III. DISCUSSION

### A. Timeliness of Appeal

As to the timeliness of Ramirez's appeal to this Court, an appeal of "[a]n order in any matter arising under the Pennsylvania Election Code" "shall be taken within ten days after the entry of the order from which the appeal is taken." Pa. R.A.P. 903. Thus, in this instance, Ramirez had until July 2, 2018, to appeal from the trial court's order docketed on June 21, 2018. As noted above, Ramirez electronically filed his notice of appeal on July 2, 2018, but the trial court rejected it on July 3, 2018, based on a defect in the certificate of service. Ramirez refiled the notice of appeal the same day the trial court rejected it, and the trial court then accepted it for filing with a date of July 3, 2018, thereby causing the trial court to consider it untimely. At issue is whether Ramirez's appeal was timely when he filed the notice of appeal on July 2, 2018, the trial court rejected it, and then the trial court accepted a refiled notice of appeal on the following day.

In support of the timeliness of the appeal, Ramirez points to Pa. R.C.P. No. 205.4(e), relating to electronic filing and service of legal papers (commonly referred to as the eFiling Rescue Rule), which provides:

> (e)(1) A filing party shall be responsible for any delay, disruption, interruption of the electronic signals and legibility of the document electronically filed, except when caused by the failure of the electronic filing system's website.

10

*Note:* The filing party accepts the risk that a document filed by means of electronic filing may not be properly or timely filed with the prothonotary.

(2) *No pleading or other legal paper that complies with the Pennsylvania Rules of Civil Procedure shall be refused for filing by the prothonotary or the electronic filing system based upon a requirement of a local rule or local administrative procedure or practice pertaining to the electronic filing of legal papers.*

*Note:* See also Rule 205.2 governing filing legal papers with the prothonotary.

(3) If a pleading or other legal paper is not accepted upon presentation for filing or is refused for filing by the electronic filing system, the prothonotary or the electronic filing system, as may be appropriate, shall immediately notify the party presenting the legal paper for filing of the date of presentation, the fact that the document was not accepted or refused for filing by the system, and the reason therefor.

(4)(i) The court upon motion shall resolve any dispute arising under paragraphs (1) and (2) of this subdivision.

(ii) *If a party makes a good faith effort to electronically file a legal paper but it is not received, accepted or filed by the electronic filing system, the court may order that the paper be accepted and filed nunc pro tunc upon a showing that reasonable efforts were made to timely present and file the paper.*

(Emphasis added.)

Thus, Pa. R.C.P. No. 205.4 authorizes courts to utilize electronic filing and to establish local rules relating thereto. Importantly, it also provides that the prothonotary shall not refuse for filing any "pleading or other legal paper that complies with the Pennsylvania Rules of Civil Procedure." Pa. R.C.P. No. 205.4(e)(2). It further provides for notification to a party when a filing is not accepted or is rejected and allows for the court to order that a filing be accepted *nunc pro tunc* upon a showing of good faith and reasonable efforts.

11

In reviewing whether Ramirez made a good faith effort and took reasonable steps to electronically file, it is apparent to this Court that Ramirez's initial filing on July 2, 2018, was sufficient under Pa. R.A.P. 902, relating to manner of taking an appeal, such that the trial court erred in rejecting the filing. Pa. R.A.P. 902 provides:

> An appeal permitted by law as of right from a lower court to an appellate court shall be taken by filing a notice of appeal with the clerk of the lower court within the time allowed by Rule 903 (time for appeal). *Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal*, but it is subject to such action as the appellate court deems appropriate, which may include, but is not limited to, remand of the matter to the lower court so that the omitted procedural step may be taken.

(Emphasis added.) This Court has held that, under Pa. R.A.P. 902, "timeliness is the only requirement to make a notice of appeal valid," and the lack of inclusion of the trial judge on the certificate of service does not affect the timeliness of the filing. *Brown v. Levy*, 993 A.2d 364, 366 (Pa. Cmwlth.), *appeal denied*, 13 A.3d 480 (Pa. 2010).

In *Brown*, a prisoner filed a notice of appeal with a court of common pleas, but the notice of appeal was defective in that the prisoner failed to attach case docket entries, provide the requisite number of copies, and failed to provide a certificate of service indicating service upon the trial judge. The prothonotary returned the prisoner's notice of appeal rather than accept it. This Court held that the prothonotary's rejection of the notice of appeal constituted an abuse of discretion, because Pa. R.A.P. 902 only requires a notice of appeal to be timely, not free of defects, in order to be valid. This analysis is consistent with our Supreme

12

Court's subsequent decision in *Commonwealth v. Williams*, 106 A.3d 583 (Pa. 2014), wherein the Supreme Court opined:

> The clerk of courts . . . lacks the authority to reject, as defective, a timely notice of appeal. To hold otherwise would repudiate the directive of [Pa. R.A.P.] 902 that a timely notice of appeal is self-perfecting. It would also contravene the plain language of [Pa. R.A.P.] 905(a)(3), which unequivocally requires the clerk for the lower court to time-stamp a notice of appeal immediately upon receipt.

*Williams*, 106 A.3d at 588.

As we conclude that Ramirez timely filed his notice of appeal on July 2, 2018, Ramirez did not require *nunc pro tunc* relief under Pa. R.C.P. No. 205.4. For this reason, and this reason alone, we affirm the trial court's July 13, 2018 order. We emphasize that the fact that Ramirez *electronically filed* the notice of appeal does not in any way alter the analysis under Pa. R.A.P. 902. Moreover, we reiterate that Pa. R.C.P. No. 205.4(e)(2) makes clear that an electronically filed document that complies with the Pennsylvania Rules of Civil Procedure cannot be rejected based upon "local rule or local administrative procedure or practice pertaining to the electronic filing of legal papers."[7]

### B. Standing

As a preliminary matter, Burgos challenges whether Ramirez has standing to bring this matter before our Court. Pa. R.A.P. 501 provides: "Except where the right of appeal is enlarged by statute, any *party* who is aggrieved by an appealable order, or a fiduciary whose estate or trust is so aggrieved, may appeal

---

[7] As we conclude that Ramirez timely filed his July 2, 2018 notice of appeal, we dismiss Ramirez's Application for *Nunc Pro Tunc* Relief as moot. Similarly, to the extent that Burgos's Motion to Dismiss seeks dismissal on the basis of the untimeliness of Ramirez's appeal, the Motion to Dismiss is denied.

therefrom." (Emphasis added.) Section 1743 of the Election Code, 25 P.S. § 3403, provides that in a Class IV contest,[8] such as the one now before the Court, "the petitioners complaining of nomination or the election, and the person returned as nominated or elected, shall be the parties thereto."

Burgos argues that Ramirez was not a petitioner in the matter before the trial court because he chose not to name himself in the Contest Petition. Rather, Burgos contends that only the twenty-two individuals who signed the Contest Petition were parties to the trial court proceedings. Burgos notes that Ramirez did not sign or verify the Contest Petition, the Contest Petition did not plead Ramirez's address in order to establish that he could have been a petitioner, and Ramirez did not intervene in the proceedings before the trial court. As such, Ramirez was never a party to the action. Moreover, Burgos notes that Ramirez does not have standing by virtue of being a fiduciary whose estate or trust was aggrieved or by an express statute. Burgos maintains that, for these reasons, Ramirez does not have standing to pursue this appeal. Because the appeal was filed only on behalf of Ramirez and not on behalf of the individuals who signed as petitioners, Burgos urges the Court to dismiss the appeal due to lack of standing.

Ramirez responds by arguing that Burgos cannot raise the issue of standing for the first time on appeal, noting that Burgos did not preliminarily object on that basis nor did he raise the issue at the hearing before the trial court. Objections to lack of standing, including claims of lack of capacity to sue, must be raised at the earliest opportunity and are waived if not promptly raised. *Erie Indem. Co. v. Coal*

---

[8] "Class IV" refers to "[n]ominations and elections of Senators and Representatives in the General Assembly, and nominations of Representatives in Congress." Section 1711 of the Election Code, 25 P.S. § 3291.

14

*Operators Cas. Co.*, 272 A.2d 465, 467 (Pa. 1971); *Twp. of Bristol v. 1 Enters., LLC*, 177 A.3d 1045, 1051 (Pa. Cmwlth. 2018).

In reply, Burgos counters that the election contest matter did not reach the answer stage and, thus, he did not have an opportunity to raise an objection based on standing. Furthermore, Burgos notes that this issue only became significant because Ramirez is the only person who appealed, while the other individuals who "unquestionably had standing, did not do so." (Appellee's Reply Br. at 1.)

Burgos's argument that Ramirez lacks standing to appeal to this Court is premised entirely on his characterization that Ramirez was not a petitioner in the proceedings below. This Court, however, disagrees with that characterization. The Contest Petition is titled "Petition of Frederick Ramirez to Contest Election" and indicates that Ramirez is contesting the nomination of Burgos. (R.R. at 10.) While Ramirez indicates in the Contest Petition that he is a candidate who received less votes in the election than Burgos, that fact does not disqualify Ramirez from also being a petitioner. Moreover, Ramirez is the only petitioner named in the body of the Contest Petition; the other petitioners signed (and five of them verified) the Contest Petition, providing their addresses. Although Ramirez did not sign the Contest Petition, there is no requirement in the statute that he do so. Rather, Section 1757 of the Election Code, 25 P.S. § 3457, only requires that the petitioners shall be registered electors who voted at the primary or election so contested and that five of the petitioners verify the petition.[9]

---

[9] Section 1757 of the Election Code provides:

> In each of the aforesaid second, third, fourth and fifth classes, *the petitioners shall be registered electors who voted at the primary or election so contested*. In cases of the third class, *each petition shall be verified* by the affidavits of at least ten of the petitioners; in the

Furthermore, we agree with Ramirez that Burgos waived the issue of Ramirez's standing by not raising it before the trial court. Burgos's assertion that he did not have the opportunity to do so is belied by the record. At the hearing, Burgos raised five objections to the Contest Petition, including whether there was a sufficient number of petitioners for the matter to proceed. At no point during the hearing did Burgos assert that Ramirez was not a petitioner and lacked standing. Even after the trial court ruled in favor of Burgos regarding petitioners' failure to post a bond, Burgos placed on the record two additional objections to the Contest Petition so that the objections would be preserved for purposes of appeal. Neither of those objections challenged whether Ramirez was a petitioner in the matter or otherwise lacked standing.

For the reasons set forth above, to the extent that Burgos's Motion to Dismiss seeks dismissal on the basis of lack of standing by Ramirez, the Motion to Dismiss is denied.

### C. Bond

Next, we address whether the trial court erred in dismissing the Contest Petition under Section 1759 of the Election Code, relating to the posting of a bond. That section provides:

> Whenever a petition to contest nomination or contest election of any class shall be presented to the General Assembly or to the court, *it shall be the duty of said*

---

second, fourth and fifth classes, *by the affidavit of at least five of the petitioners*. Such affidavits shall be taken and subscribed before some person authorized by law to administer oaths, and shall set forth that they believe the facts stated therein are true, that according to the best of their knowledge and belief, the primary or election was illegal and the return thereof not correct, and that the petition to contest the same is made in good faith.

(Emphasis added.)

16

> *petitioners, within five days thereafter, to file a bond,* signed by at least five of the said petitioners *in such sum as the* presiding officer of the Senate or said *court shall designate*, with two or more individual sureties or a corporate surety to be approved by the said officer or court or judge, conditioned for the payment of all costs which may accrue in said contested nomination or election proceeding, in case the said petitioners by decree shall be adjudged liable to pay said costs, *and if the said bond shall not be filed, as herein provided, the said petition to contest the nomination or election shall be dismissed.*

(Emphasis added.)

Ramirez takes the position that it was impossible for him to file a bond, because the trial court did not designate an amount for the bond within five days. Ramirez's entire argument is: "The action of the [trial] court administration to reject the Petition filed pursuant to [Section 1741 of the Election Code,] 25 P.S. § 3401[,] in the [trial court] rendered it impossible for Petitioners to enter bond within five days in conformity with [Section 1759 of the Election Code], which also requires that the bond be in 'such sum . . . as the court shall designate.'" (Appellant's Br. at 4 (omission in original).)

In response, Burgos cites two Pennsylvania Supreme Court cases, both decided under a prior, but similar statute—*In re McChesney*, 192 A. 415 (Pa. 1937), and *In re Moritz*, 100 A. 1033 (Pa. 1917). In *In re McChesney*, McChesney moved for the dismissal of the petition to contest his election, arguing that the bond was not in conformity with the requirements of the now-repealed Section 9 of the Act of May 19, 1874, P.L. 208, repealed by the Act of June 3, 1937, P.L. 1333, *as amended*,[10] formerly 25 P.S. § 2525, which provided:

---

[10] This section was amended by the Act of April 28, 1899, P.L. 118, 25 P.S. § 2525, which is the same section at issue in *In re Moritz*. It appears that both *In re McChesney* and *In re Moritz* addressed the statutory language set forth above.

17

> Whenever a petition to contest an election . . . shall be presented to the court, it shall be the duty of said petitioners, within ten days thereafter, to file a bond signed by at least five of the said petitioners in such sum as the said court . . . shall designate, with sureties, to be approved by the said court or judge, conditioned for the payment of all costs . . . and if the said bond shall not be filed, as herein provided, the said petition to contest the election shall be dismissed.

*In re McChesney*, 192 A. at 416 n.1. Citing *In re Moritz*, the Supreme Court wrote:

> The filing of a bond which conforms to the requirements of the Act of Assembly and within the time prescribed is a condition precedent not only of the petitioners' right to proceed with the election contest, but also of the court's jurisdiction to hear and determine the contest. In our opinion, the bond here filed was irregular, and the court below had no alternative but to dismiss the petition.

*In re McChesney*, 192 A. at 416. In *In re Moritz*, the Supreme Court affirmed the dismissal of an election contest where the petitioners failed to file a bond with a seal affixed to it, concluding that the bond was irregular. The Supreme Court wrote: "The provision is not only plain with respect to the essential character of the security to be given, but mandatory that, [unless] the prescribed bond be filed within [ten] days after the filing of the petition to contest, the court shall dismiss the petition." *In re Moritz*, 100 A. at 1035.

Neither of these decisions, however, addresses the circumstances presently before the Court. In both, the respective common pleas courts, upon the filing of petitions to contest election, issued orders setting their matters for hearing and designating the amounts of the statutory bonds. Thereafter, the petitioners complied and filed bonds. The Pennsylvania Supreme Court concluded that the filed bonds were deficient under the terms of the statute then-in-effect and, therefore, the petitions should have been dismissed. Here, by contrast, Ramirez never filed a bond such that the legal conformity of the instrument could be challenged. Rather, this

case presents the question of how the statutory bond requirement in Section 1759 of the Election Code should, or can, be administered where the common pleas court does not designate the amount of the bond.

Burgos also cites *Bristol Township Election Contest*, 70 Pa. D. & C.2d 275 (C.P. Bucks Co. 1975), wherein the Court of Common Pleas of Bucks County dismissed an election contest where no bond had been posted *and* the record disclosed that the petitioners had not requested the common pleas court to set the amount of the bond. The petitioners in *Bristol Township Election Contest* had argued that the common pleas "court ha[d] the duty to designate the amount of the bond and, having failed to so designate an amount (in the absence of a request), no bond is required." *Bristol Twp. Election Contest*, 70 Pa. D. & C.2d at 276. The common pleas court rejected that argument, noting that the election contest petition did not request the amount of a bond be set, the petitioner did not file an independent petition requesting a bond be set, and the petitioner made no attempt to file any bond in any amount as required by Section 1759 of the Election Code. Ultimately, the common pleas court concluded that it had "no jurisdiction to hear or consider the present matter because of [the] petitioner's failure to comply with the statutory requirement to post a proper bond." *Id.* at 279.

The Court of Common Pleas of Pike County reached a different conclusion in *In re General Election of November 4, 1975 (No.1)*, 71 Pa. D. & C.2d 68 (C.P. Pike Co. 1975). The petitioners in that case filed their election contest petition on November 13, 1975. A petition to fix the amount of the bond was filed the same day, but the court did not act on it, and the statutory period for filing the bond lapsed. A motion to quash the petition for failure to file the bond followed. Within the statutory period to contest the election, the same petitioners filed a second

petition, identical to the first, along with a request to set the bond amount. This time, the common pleas court promptly set the bond amount and the petitioners filed the bond. The common pleas court refused to quash the first appeal for failure to file a timely bond, concluding primarily that the second petition and filed bond effectively cured any defect. The common pleas court's analysis of the issue, however, is instructive:

> The contest petition was originally filed November 13, 1975. On the same day, a petition to fix bond was filed but never acted upon by the court. We agree that time elements required by the Election Code must be strictly enforced. We further agree that, under ordinary circumstances, the failure to file a bond is fatal to the validity of the contest proceeding. However, there are present here some unusual circumstances. A request to fix bond was presented to the court within the statutory time. Judge Marsh did not act upon it. As stated earlier, he understood it was to be presented to the writer of this opinion as President Judge of the court for action upon it. There was no lack of diligence on the part of counsel in requesting that the amount of the bond be fixed by the court. While we agree that the court is generally without authority to extend the time for filing any proceeding beyond the statutory period, yet it is also true if the delay is induced by some breakdown in the court's operation, the court does have the power to extend the statutory period.[11]

> Under the circumstances here present, it would be manifestly unfair to petitioners to summarily quash their petition without first holding an evidentiary hearing to determine whether the cause of the delay was due to the inaction of petitioners, or was it due to a breakdown in the court's operation.

---

[11] In support, the common pleas court cited the Pennsylvania Supreme Court's decision in *Nixon v. Nixon*, 198 A. 154, 157 (Pa. 1938) (authorizing *nunc pro tunc* relief from statutory deadlines).

20

However, in light of the events which followed the original filing of the petition, we think the issue has become moot. Respondents argue that petitioners should have brought mandamus proceedings to force the court to fix the amount of the bond within the statutory period. We consider such a move on the part of petitioners to be impractical because the time period was too short in which to act. We also see with what reluctance an attorney would move for a writ of mandamus against a judge, particularly where petitioners had the alternative remedy of refiling the petition.

The request to fix the amount of the bond was made to the writer of this opinion on November 25, 1975. On that day, the amount was fixed and the bond was filed on November 26, 1975.

We agree that the petition filed November 24, 1975, was not an amendment of the petition filed on November 13, 1975, since it was an exact duplicate of the first petition. Whether or not the court had the authority to grant leave to file the petition on November 24, 1975, is immaterial. Petitioners had the absolute statutory right to contest the election within the statutory period. November 24, 1975, was the last day such petition could be legally filed. Counsel for petitioner advised the court on November 24, 1975, of his concern that his request to fix bond had not been acted upon. To obviate any problem, he refiled his petition on November 24, 1975, after being told by the court, "You can file as of today." The amount of the bond was fixed on November 25, 1975, and the bond filed the next day. Thus, the time requirements of the Election Code were satisfied.

We have not found, nor has counsel referred us to, any appellate or lower court case which has passed upon the particular circumstances before us. The facts are unique which likely explains such lack of legal precedents.

We conclude that petitioners could perfect their election contest petition by refiling it within the required statutory period without leave of court and without a formal withdrawal of their first petition. We think it would be unjust to rule otherwise under the unusual circumstances here present. We do not find any evidence

21

of dilatory action on the part of counsel for petitioners. They acted promptly to have the amount of the bond fixed after the original filing of their contest petition. When this was not done, they acted alertly to overcome the possible quashing of the original filing, by refiling the petition within the statutory period. Neither do we see any prejudice to respondents in such a ruling. If the petition was filed for the first time on November 24, 1975, they could not properly object to the filing date.

*In re General Election of November 4, 1975 (No. 1)*, 71 Pa. D. & C.2d at 75-77 (citation omitted).

The circumstances in this case are, at least, just as unusual as those encountered by the Pike County Common Pleas Court. Ramirez attempted to file his timely Contest Petition on June 4, 2018. It was not until June 7, 2018, that the trial court accepted it, correcting its earlier jurisdictional error. Phila. Civ. R. 206.1(a) designates a petition under the Election Code (a statutory petition) as a petition subject to the procedures set forth in Pa. R.C.P. Nos. 206.1 through 206.7. With respect to the content and form of the petition, the Pennsylvania Rules of Civil Procedure provide:

> (b)     A petition shall specify the relief sought and state the material facts which constitute the grounds therefor. All grounds for relief, whether to strike or open a default judgement, shall be asserted in a single petition.

> (c)     A petition shall be divided into paragraphs numbered consecutively. Each paragraph shall contain as far as practicable only one material allegation.

Pa. R.C.P. No. 206.1(b), (c). When filing a petition, Pa. R.C.P. No. 206.5(b) requires that the petitioner attach to the petition a form order. Pa. R.C.P. No. 206.5(b) and cmt. This form order is the Rule to Show Cause order, not the order granting the ultimate relief sought in the petition. It provides for such things as service upon the respondent, the time by which the respondent must answer the petition, and whether

22

and, if so, when the court will conduct a hearing on the petition. The form of the order must substantially follow the form established by the court. Pa. R.C.P. No. 206.5(d); Phila. Civ. R. 206.4(c). Succinctly, under petition practice, the petitioner sets forth in the petition the relief he seeks in the matter, while the proposed order addresses pre-disposition procedural matters.[12]

In this case, Ramirez appears to have complied with the petition practice. He filed his petition with a proposed order that substantially followed the form required under the Philadelphia Civil Rules. Because, however, this was a contest petition under the Election Code, Ramirez included in his proposed order a line item for the trial court to designate the amount of the statutorily-required bond. Ramirez even included a citation in the proposed order to the governing statute. The trial court did not docket the Contest Petition until June 7, 2018. The issuance of a rule to show cause is discretionary with the trial court "unless the [trial] court by local rule adopts the procedure of Rule 206.6 providing for issuance as of course." Pa. R.C.P. No. 206.4(a)(1). Philadelphia Civil Rule 206.4(c) adopts the rule to show cause process set forth in Pennsylvania Rule of Civil Procedure No. 206.6 and provides, in relevant part: "Upon the filing of a petition, a rule to show cause *shall be issued as of course by the Motion Court clerk* on behalf of the [trial c]ourt."[13] (Emphasis added.) Based on our review of the record, however, that did not happen. Instead, according to the docket, the Contest Petition was assigned to the trial court

---

[12] There is no requirement that a request for bond must be made in the *petition* to contest election. The statute provides only that the bond shall be in an amount designated by the court. The section does not provide for any process by which the amount of the bond can, should, or must be set.

[13] This Court has previously explained that the trial court lacks discretion when a statute or rule utilizes the word "shall." *See Jennison Family Ltd. P'ship v. Montour Sch. Dist.*, 802 A.2d 1257, 1262 (Pa. Cmwlth. 2002), *appeal denied*, 815 A.2d 635 (Pa. 2003).

judge four days later, on June 11, 2018. The trial court judge then issued the Show Cause Order, which was not docketed until June 14, 2018. The Show Cause Order set the matter for hearing on June 20, 2018, four business days later. Despite the inclusion of the bond line item in the mandated proposed order accompanying the Contest Petition, the trial court judge did not include a line item for the bond in the Show Cause Order. By this time, regardless, the statutory five-day period post-petition for filing the bond had expired.

Although the parties appeared before the trial court for the hearing on June 20, 2018, they never reached the merits of the Contest Petition. Instead, as noted above, counsel for Burgos raised multiple grounds for dismissal, one of which addressed the bond requirement. Despite the foregoing history and rules governing petition practice, the trial court granted Burgos's oral motion to dismiss on the bond issue, but refused Ramirez's oral motion for the trial court to set the bond amount at the hearing and allow him to file the bond *nunc pro tunc*. In this respect, the trial court erred. The trial court in its Rule 1925(a) Opinion and Burgos in his brief on appeal focus on the five-day filing requirement. They ignore, however, the equally mandatory requirement that the petitioners file the bond "in such sum as . . . said court shall designate." Section 1759 of the Election Code. The statute does not authorize the petitioners to file a bond in the amount of their choosing. Indeed, under the clear language of the statute, doing so would appear to be just as defective as filing the bond on the sixth day.

The question, then, is whether Ramirez, acting under a very compressed timeline and notwithstanding the trial court's original erroneous decision to reject the Contest Petition, attempted in good faith to comply with Section 1759 of the Election Code. Like the petitioners in *In re General Election of November 4, 1975*

24

*(No. 1)*, we believe that he did. He filed the Contest Petition timely under the Election Code along with the mandated proposed order. Within the mandated proposed order, Ramirez appropriately notified the trial court of the need for the trial court to establish the amount of the bond under Section 1759 of the Election Code, providing a line in the proposed order for the trial court to designate the bond amount. The trial court originally rejected the Contest Petition in error, requiring Ramirez to focus his efforts immediately on correcting that oversight. Once corrected, it appears that rather that following its own rules and issuing the Rule to Show Cause "as of course," this time-sensitive matter was assigned to the trial court judge. The trial court judge, however, omitted any reference to the amount of the bond in her Show Cause Order. Again, operating under a compressed timeframe, when the bond issue came up at the hearing on June 20, 2018, but before any consideration of the merits of the Contest Petition, Ramirez asked the trial court judge to set the bond amount, and the trial court judge refused.

If the question is whether Ramirez *could* have filed a separate motion/petition with the trial court to set the amount of the bond at some point prior to the expiration of the five-day statutory period, the answer is certainly yes. If the question is whether the Election Code or the circumstances in this particular matter compelled him to do so, the answer is no. The parties and the courts are operating under a very compressed calendar in these election matters. Based on the record before us and considering the arguments of the parties as well as the trial court's Rule 1925(a) Opinion, it is evident that Ramirez's failure to file a bond in the amount designated by the trial court within the five-day statutory period was due not to his inaction, but to a breakdown in the trial court's handling and consideration of the

25

Contest Petition. Moreover, we do not see how Burgos suffered any prejudice, as the matter never proceeded to a disposition on the merits.[14]

For these reasons, we reverse the trial court's dismissal of the action for failure to file the bond required by Section 1759 of the Election Code. On remand, the trial court shall, as expeditiously as possible, designate the amount of the bond to be filed in this case and afford Ramirez five days to file the same. If Ramirez fails to file the bond at that point, the trial court shall dismiss the Contest Petition. Otherwise, the trial court should proceed expeditiously to a hearing on the merits and final ruling on the Contest Petition.[15]

## IV. CONCLUSION

Accordingly, we affirm the trial court's July 13, 2018 order. We reverse the trial court's June 20, 2018 order, dismissing Ramirez's Contest Petition for failure to file a bond as required by Section 1759 of the Election Code. We dismiss as moot Ramirez's Application for *Nunc Pro Tunc* Relief, and we deny Burgos's Motion to Dismiss. We remand this matter for further proceedings consistent with this opinion.

P. KEVIN BROBSON, Judge

---

[14] As noted in Section 1759 of the Election Code, the purpose of the bond is to secure a source of payment in the event the contest is unsuccessful and costs are assessed against the petitioners.

[15] In his Motion to Dismiss, Burgos argues that the Court should dismiss *this appeal* due to Ramirez's failure to post a bond in the proceedings before the trial court. Although Section 1759 of the Election Code makes the filing of the bond a jurisdictional prerequisite for proceedings before the trial court, it does not divest this Court of jurisdiction to consider the propriety of a court of common pleas' dismissal. To hold otherwise would necessarily mean that our Supreme Court lacked jurisdiction to issue its decisions in *In re McChesney* and *In re Moritz*— decisions upon which Burgos himself relies for the conclusion that Ramirez's failure to post a bond divested the trial court of jurisdiction.

26

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Primary Election of
May 15, 2018

In Re:  Nomination of the
Democratic Candidate for the
Office of Representative in the
General Assembly From the
197th Legislative District

Appeal of:  Frederick Ramirez

:
:
:
:
:
:
:
:
:
:
:
:

Nos.  977 C.D. 2018 and
     1009 C.D. 2018

# **O R D E R**

AND NOW, this 7th day of August, 2018, the June 20, 2018 order of the Court of Common Pleas of Philadelphia County (trial court), dismissing Appellant Frederick Ramirez's (Appellant) petition to contest election, is REVERSED, and this matter is REMANDED to the trial court for further proceedings in accordance with the accompanying opinion.  The July 13, 2018 order of the trial court, denying Appellant's request to pursue his appeal from the June 20, 2018 order *nunc pro tunc*, is AFFIRMED on alternative grounds.

It is further ordered that Appellant's application for relief in the form of a motion pursuant to Pa. R.C.P. No. 205.4(e)(4)(ii), seeking *nunc pro tunc* relief as to his notice of appeal of the trial court's June 20, 2018 order is DISMISSED AS MOOT, and Appellee Danilo Burgos's application for relief in the form of a motion to dismiss, requesting that the Court dismiss the appeals due to Appellant's lack of standing, lack of this Court's jurisdiction, and the untimeliness of the appeals, is DENIED.

Jurisdiction relinquished.

 

_____
P. KEVIN BROBSON, Judge