IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Daniel Mohn, Chad Wallace and Irene Silvius | : | |
| | : | |
| | : | |
| v. | : | No. 24 C.D. 2018 |
| | : | Argued: December 12, 2019 |
| Bucks County Republican Committee | : | |
| | : | |
| | : | |
| Appeal of: Daniel Mohn | : | |


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED:  March 6, 2020


Daniel Mohn appeals the order of the Bucks County Court of Common Pleas (trial court)[1] overruling his motion for summary judgment and

---

[1] The Superior Court transferred the instant appeal to this Court, concluding that we possess jurisdiction pursuant to Section 762(a)(4)(i)(C) of the Judicial Code, 42 Pa. C.S. §762(a)(4)(i)(C).  *See Mohn v. Bucks County Republican Committee*, 218 A.3d 927, 935 (Pa. Super. 2019) ("These [appellate] issues involve election matters that 'draw[] into question the application, interpretation or enforcement of . . . statute[s] relating to elections, . . . or other election procedures.'  42 Pa. C.S. [] §762(a)(4)(i)(C).  Consequently, the subject matter of this appeal directly implicates the [Pennsylvania] Election Code[ (Election Code), Act of June 3, 1937, P.L. 1333, *as amended*, §§2600-3591,] and the Commonwealth Court's precedents applying the [Election] Code's provisions.").  Nevertheless, we have been conferred with appellate jurisdiction pursuant to Section 762(a)(5)(ii) of the Judicial Code, which states that this "Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in . . . [a]ll actions or proceedings otherwise involving the corporate affairs of any corporation not-for-profit subject to Title 15 or the affairs of the members, . . . directors, officers, . . . or agents thereof."  42 Pa. C.S. §762(a)(5)(ii).  *See also* Comment to Section 9112 of the
**(Footnote continued on next page…)**

granting the Bucks County Republican Committee's (BCRC)[2] cross-motion for summary judgment.  We affirm.

_____

**(continued…)**

Pennsylvania Uniform Unincorporated Nonprofit Association Law (Nonprofit Association Law), 15 Pa. C.S. §9112 cmt. ("This chapter applies to all nonprofit associations, whether they be classified as religious, public benefit or mutual benefit or whether they are classified as tax exempt.  Therefore, the chapter covers unincorporated philanthropic, educational, scientific, social and literary clubs, unions, trade associations, [and] political organizations, such as political parties . . . .").

[2] Section 807 of the Election Code states, in relevant part:

> There may be in each county a county committee for each political party within such county, the members of which shall be elected at the spring primary, or appointed, as the rules of the respective parties within the county may provide.  The county committee of each party may make such rules for the government of the party in the county, not inconsistent with law or with the State rules of the party, as it may deem expedient, and may also revoke, alter or renew in any manner not inconsistent with law or with such State rules, any present or future county rules of such party.

25 P.S. §2837.  Additionally, Section 812 of the Election Code, added by the Act of June 14, 1947, P.L. 610, 25 P.S. §2842, provides "that, [w]hen acting in the capacity of a political committee, such duly elected or appointed members shall be subject to the control, direction and supervision of the political committee of which they are members."  *See also* Mohn's Amended Motion for Preliminary Injunction, Exhibit I at 13, Rule 6.1 of the Rules and Bylaws of the Republican Party of Pennsylvania ("Each County Republican Committee shall adopt rules and bylaws, which shall not be inconsistent with the Rules of the State Party or law, to govern the operation of the party within their respective county.").

Pursuant to the foregoing, Rule I, Article 3 of the BCRC's Rules provides, in pertinent part:

> Whenever it shall appear a person holding a Party Office . . . is neglecting or refusing to attend to the duties of his . . . office . . . he . . . shall be disqualified and his . . . membership or office shall be

**(Footnote continued on next page…)**

2

Mohn was elected as a Republican Committeeman in Yardley Borough, Bucks County, in the May 20, 2014 General Primary Election and the April 26, 2016 General Primary Election. On August 25, 2014, following his

---

**(continued…)**

> declared vacant. No such disqualification shall occur nor such membership be declared vacant until so determined by the Executive Committee as hereinafter set forth.
>
> * * *
>
> The Executive Committee shall by majority vote determine whether or not the Chairman . . . may declare a vacancy provided however that before such action by the Chairman . . . the Party Officer shall be given an opportunity for a full hearing before the Executive Committee after due notice of the nature of the charges, the time and place of the hearing, and his . . . entitlement generally to the elements of due process in the conduct of such proceedings.

Reproduced Record (R.R.) at 36a-37a. In turn, Rule I, Article 2 defines "Party Office" as including "Committeeman or Committeewoman with a duly constituted election district or precinct." *Id.* at 36a. *See also* Mohn's Amended Motion for Preliminary Injunction, Exhibit I at 19, Rule 11.1 of the Rules and Bylaws of the Republican Party of Pennsylvania, which states, in pertinent part:

> Whenever it shall appear that any member of the State Party . . . neglects or refuses to attend the duties of office . . . the State Party Chairman shall appoint a committee of three (3) qualified Republican electors to investigate such charges. The committee shall notify the person so charged of the time and place of hearing, and if upon investigation it finds such charges to be true and correct, it shall so report in writing to the State Party Chairman[.] In the case of a member of State Party, the State Party Chairman shall declare the office vacant and notify the Chairman of the County Committee in which the said member resides of the vacancy.

initial election to that office, Mohn signed and dated the following BCRC Executive Committee Resolution, which states, in relevant part:

> BE IT RESOLVED AND IT IS HEREBY RESOLVED BY THE EXECUTIVE COMMITTEE OF THE [BCRC] THAT THE DUTIES OF THE INDIVIDUAL COMMITTEEPEOPLE OF THE COUNTY BE SET FORTH AS FOLLOWS:
>
> * * *
>
> ► HELP ENDORSED REPUBLICANS RUNNING FOR OFFICE IN ACCORDANCE WITH THE [BCRC] BY-LAWS[;]
>
> * * *
>
> ► COVER POLLS ON ELECTION DAYS, DISTRIBUTE THE SAMPLE BALLOT[.]

R.R. at 260a.[3]

On May 18, 2016, the BCRC's Ethics Committee Chairman informed Mohn that the Ethics Committee had received notification of ethics violations committed by Mohn during the April 26, 2016 General Primary Election, including campaigning against the BCRC-endorsed candidates and distributing a non-endorsed sample ballot, and that a June 2, 2016 hearing was scheduled before the Ethics Committee "to make a recommendation on the matter to the Executive

---

[3] Section 9112 of the Nonprofit Association Law defines "governing principles," in relevant part, as "[t]he agreements . . . in record form . . . that govern the purpose or operation of a nonprofit association and the rights and obligations of its members[.]" 15 Pa. C.S. §9112. *See also* 15 Pa. C.S. §9112 cmt. ("Governing principles are the equivalent of the articles of incorporation, bylaws and agreements that govern the internal affairs of a nonprofit association."); Section 9125(b)(1) of the Nonprofit Association Law, 15 Pa. C.S. §9125(b)(1) ("A member shall, consistent with the governing principles and the contractual obligation of good faith and fair dealing . . . discharge duties under the governing principles to the nonprofit association and the other members[.]").

Committee for [its] consideration." R.R. at 50a-52a; *see also id.* at 57a-58a, 69a-74a, 82a-90a.[4] On June 2, 2016, the BCRC's Ethics Committee conducted a hearing on the violations, at which Mohn refused to appear to contest the purported violations or the Ethics Committee's or the Executive Committee's authority to proceed thereon under the BCRC's Rules. *Id.* at 16a, 94a-95a.[5]

On June 7, 2016, Mohn filed a Complaint in the trial court seeking declaratory and injunctive relief pursuant to the Declaratory Judgments Act, 42 Pa. C.S. §§7531-7541, to prevent his removal as a Committeeman with the BCRC. R.R. at 6a-29a.[6] In Count I, Mohn sought a declaration that: (1) the Code of Ethics in the BCRC's Rule VII do not apply to committeepersons; (2) the Ethics Committee does not have authority to conduct hearings or otherwise address alleged violations of the Code of Ethics; (3) the BCRC may not remove and/or disqualify and/or discipline and/or sanction elected committeepersons for

---

[4] The alleged violations of his duties occurred during the course of his first term of office following the 2014 General Primary Election. *See* BCRC Rule II, Article 2 ("Members of the County Committee shall be elected by the Republican electors at the Primary Election in the even numbered years, *and serve for a term of two years, beginning the first Monday of June of the year elected.*"). R.R. at 37a (emphasis added). *See also* Section 9126(a)(1) of the Nonprofit Association Law, 15 Pa. C.S. §9126(a)(1) ("A person becomes a member and may be suspended, dismissed or expelled in accordance with the governing principles."); Section 9130(b)(2) of the Nonprofit Association Law, 15 Pa. C.S. §9130(b)(2) ("The governing principles may provide for the . . . creation and authority of committees of the managers[.]").

[5] Specifically, "Mohn's counsel emailed a letter to [the Ethics Committee Chairman] on June 2, 2016, advising that Mohn would not attend the hearing because the Ethics Committee did not have authority to conduct the hearing." R.R. at 16a.

[6] Initially, the Complaint was filed jointly by two other committeepersons who were also the subject of complaints with the Executive Committee. However, these other committeepersons filed a praecipe to discontinue their portion of the Complaint. *See* R.R. at 108a.

5

purported Code of Ethics violations; and (4) the BCRC may not remove, disqualify, discipline, or otherwise impose sanctions for alleged violations of the Code of Ethics. *Id.* at 26a. In Count III, Mohn sought an injunction to prevent an Executive Committee meeting that was scheduled for June 9, 2016. *Id.* at 28a-29a.

On June 30, 2016, the BCRC sent Mohn a letter, which stated, in relevant part:

> As you're aware, complaints were filed against you . . . pertaining to your conduct as a committeeman. Upon the recommendation of the Ethics Committee, the [BCRC] Executive Committee will be holding a hearing concerning those complaints pursuant to Rule I, Article 3 of our By-Laws[.]
>
> The hearing will take place immediately following the Executive Committee Meeting scheduled for 7:00 PM on Thursday, August 11th[.]
>
> The hearing will be conducted by receiving testimony from witnesses as well as any documentary evidence. All witnesses will be subject to cross-examination and a stenographic record will be made of the proceedings. After considering all relevant evidence presented, the Executive Committee shall by majority vote determine whether or not the Chairman may declare your committeeman position vacant.

R.R. at 261a.

On August 11, 2016, the Executive Committee conducted a hearing on the complaints pursuant to its authority conferred by Rule I, Article 3 of the BCRC's Rules. R.R. at 168a-319a. Again, neither Mohn nor his counsel appeared to contest the complaints, or the authority of the Executive Committee to act on the complaints or remove him as a committeeman, or to participate in the hearing in any manner; however, a letter sent by Mohn's counsel to the Executive Committee

6

regarding the hearing was read into the record and entered into evidence. *Id.* at 177a-183a, 244a.[7] The Hearing Master also read into the record and entered into evidence the BCRC's Executive Committee Resolution outlining the duties of committeemen and committeewomen that Mohn signed following his initial election to that office in 2014. *Id.* at 184a-185a, 260a.

The Hearing Master explained to the Executive Committee members that "if you determine that he has conducted himself and engaged in conduct [regarding] whether he has neglected or refused to attend to his duties of office, whether he's violated those duties, you'll make that determination in making a determination whether or not he should be disqualified as a Republican Committeeman." R.R. at 211a. The Executive Committee heard testimony and received evidence that Mohn was present at polling places outside his election district during the April 26, 2016 General Primary Election handing out sample ballots that were not those endorsed by the BCRC, and that he was the Treasurer for a political action committee (PAC) that produced the unauthorized sample ballots. *See id.* at 193a-195a, 199a-200a, 206a-207a, 217a-222a. As he was absent from the hearing, Mohn did not present any evidence to impeach or rebut the evidence presented supporting a determination that he violated the BCRC's Rules.

In conclusion, the Executive Committee's counsel explained:

> [Mohn] formulated a PAC, he distributed fliers in our neighborhoods. He sent these things out, and he directly asked voters not – he directly asked voters not to look at or follow the sample ballot.

---

[7] In the letter, Mohn's counsel explained that Mohn would not attend the Executive Committee's hearing "because the complaints against him do not allege any conduct, even if true, that would constitute a basis to disqualify [him] from his position as a committeeman under the Rules of the [BCRC]." R.R. at 257a.

7

And he left his polling place, because as the testimony showed you, and I remind you, ladies and gentlemen, it's uncontradicted testimony.

* * *

So I would ask you to find that [] Mohn has violated his Committeeperson Resolution, that he has not helped endorse [sic] Republicans running for office, that he did not cover his polls on Election Day, and he did not distribute the Sample Ballot; in fact, actively worked against it.

I mean, it's one thing if you don't like the ballot, you throw it, you don't pass it out, but he actively told Republican voters not to follow the Sample Ballot, and that, I suggest, is a violation of the Code of Ethics.

He did not conduct himself at all times in a manner which will reflect credibly on the Party; he did not adhere to the spirit and letter of his oath of office, which is this (indicating); and he did not faithfully and conscientiously perform the duties of his office.

R.R. at 242a-244a.

Ultimately, the Executive Committee passed a motion[8] that disqualified Mohn from the office of committeeman and declared that his office is vacant. R.R. at 253a-254a. By letter dated September 12, 2016, the BCRC informed Mohn of his disqualification and the vacancy of his office. *Id.* at 557a.

On December 5, 2016, the BCRC filed an Answer to Mohn's Complaint in the trial court denying all of the material allegations raised therein, and raised in New Matter, *inter alia*, the affirmative defenses that Mohn's claims against the BCRC are "barred and/or limited by the doctrine or waiver," "barred

---

[8] The members of the Ethics Committee, who had referred the complaints to the Executive Committee, did not participate in the deliberations or vote regarding Mohn's removal as a committeeman. R.R. at 251a-252a.

8

and/or limited by the doctrine of unclean hands," and "barred by [his] failure to exhaust other remedies." R.R. at 123a-124a.

The parties subsequently filed cross-motions for summary judgment and briefs in support thereof and in opposition thereto. *Id.* at 153a-319a, 320a-356a, 357a-574a, 575a-594a. In his motion for summary judgment, Mohn alleged, *inter alia*, that the BCRC removed him from office for a violation of its Ethics Rules "by: (i) disseminating unethical and factually inaccurate statements during the [2016 General Primary Election], and (ii) actively campaigning against an endorsed candidate for committeeman and disparaging the importance and value of the Bucks County [Republican Party] sample ballot." *Id.* at 154a. Mohn asserted that BCRC "may not disqualify a committee person for alleged violations of Ethics Rules" because "they do not apply to committee persons," but, rather "to 'elected and appointed public officials.' Rule VII." *Id.* at 163a.

Additionally, relying on *Bentman v. Seventh Ward Democratic Executive Committee*, 218 A.2d 261, 264-65 (Pa. 1966), Mohn claimed that the BCRC could not remove him from office under Rule I, Article 3, because it only "prohibits a committeeman from supporting a candidate for election in opposition to any nominee of the Republican Party in a **general** election," not in a General Primary Election as herein, and he "cannot be found to have neglected or refused to attend to the duties of his office because the alleged conduct occurred before [his] current term of office." R.R. at 164a (emphasis in original).

In its cross-motion for summary judgment, the BCRC alleged, *inter alia*, that "Mohn's refusal to participate in the hearings before the [BCRC] Ethics Committee and the [BCRC] Executive Committee and [his] failure to address the evidence against him and/or to proffer evidence on his behalf constitutes a waiver"

9

of the claims raised in Counts I and III of the Complaint, and his "prayers for declaratory or injunctive relief" "are estopped" as a result of his non-participation. R.R. at 375a. The BCRC also asserted that "[b]ecause Mohn's removal from office did not implicate a state function under color of statute, his disqualification is a purely intra-party matter and [the trial court] lack[ed] jurisdiction to adjudicate his claims with regard to the propriety of the [BCRC]'s application of its Rules to his conduct in the performance of his Party office. [*Bentman*]." *Id.* at 376a.

Following a trial court argument on the cross-motions at which counsel for both parties appeared, *see* N.T. 11/27/17[9] at 2-26, the trial court issued the instant order granting BCRC's cross-motion for summary judgment and denying Mohn's motion for summary judgment. R.R. at 631a.[10] Mohn then filed this appeal.[11]

---

[9] "N.T. 11/27/17" refers to the transcript of the trial court argument on the cross-motions for summary judgment.

[10] In the Pa. R.A.P. 1925(a) opinion filed in support of its order, the trial court stated:

> The issue on appeal is whether this court has jurisdiction to intervene in intra[-]party political association matters regarding the removal of an elected committeeperson. The [BCRC] has a right to political association free from state interference under the First and Fourteenth Amendments of the United States Constitution. Further, [Section 812 of the] Election Code, 25 P.S. §2842, provides that elected committee people "shall be subject to the control, direction, and supervision of the political committee of which they are members." This includes the right to determine its membership based on self-generated rules. [*Democratic Party of the United States v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 121 (1981)].
>
> A court must intervene when "[]the internal organization of a political party directly affects its performance of such public function." [*Bentman*, 218 A.2d at 266.] However, this

**(Footnote continued on next page…)**

10

**(continued…)**

intervention is qualified. "The invocation of judicial interference in this area must be restricted or circumscribed; judicial intervention must be limited to controversies where the issue raised bears a *direct* and *substantial* relationship to the performance of *public* functions by the political party." [*Id.* (emphasis in original)].

In *Bentman*, the issue was whether the political party could remove newly elected members from their positions before they were ever able to perform their duties to the party. [*Id.* at 266]. The Court was concerned with the party's interference with the direct and substantial public interest of the democratic system. [*Id.*] Importantly, the Court noted that these elected committeemen were removed "not for anything which they had done as committeemen or in their representative capacity but by reason of that which it is alleged they had done prior to their election and selection." [*Id.*] Therefore, the Court in *Bentman* held it was appropriate to intervene in the political party's action because of the public interest at stake regarding the democratic process and rendering the "electoral process a nullity . . . ." [*Id.*]

This case is distinguishable from *Bentman*. Here, Mohn was removed for his failure to comply with the BCRC Rules while acting in his capacity as an elected Committee member. Thus, the public interest of concern in the *Bentman* case of a party disregarding the democratic process and dismissing an elected official without cause is not present here. This is a purely intra-party disciplinary matter that the U.S. Constitution has reserved to the party to address free from government intervention.

Therefore, this court lacks jurisdiction over this issue and did not err when it granted BCRC's Cross-Motion for Summary Judgment.

R.R. at 676a.

[11] This Court's review of the trial court's order granting the cross-motion for summary judgment is limited to determining whether there has been an error of law or a manifest abuse of discretion. *Borough of Crafton v. Gaitens*, 534 A.2d 1149, 1152 (Pa. Cmwlth. 1987). "An abuse **(Footnote continued on next page…)**

11

On appeal, Mohn claims that the trial court erred in determining that it did not have jurisdiction to grant the requested declaratory and injunctive relief and in granting the BCRC's cross-motion for summary judgment, because BCRC did not have the authority to remove him under the BCRC's Rules. To the contrary, the record in this matter demonstrates that the court did not err in granting the BCRC's cross-motion for summary judgment and in denying Mohn's request for declaratory and injunctive relief.[12]

As the United States Supreme Court has explained:

> The State argues that its law places only a minor burden on the National Party. The National Party argues that the burden is substantial, because it prevents the Party from "screen[ing] out those whose affiliation is . . . slight, tenuous, or fleeting," and that such screening is essential to build a more effective and responsible Party. But it is not for the courts to mediate the merits of this dispute. For even if the State was correct, a State, or a court, may not constitutionally substitute its own judgment for that of the Party. A political party's choice among the various ways of determining the makeup of a State's delegation to the party's national convention is protected by the Constitution. And as is true of all expressions of First Amendment freedoms, the courts

---

**(continued…)**

of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Paden v. Baker Concrete Construction, Inc.*, 658 A.2d 341, 343 (Pa. 1995) (citations omitted).

[12] It is beyond cavil that we may affirm the trial court's order on any basis appearing in the record. *In re Primary Election of May 15, 2018*, 192 A.3d 313, 315 n.2 (Pa. Cmwlth. 2018) (citation omitted).

12

may not interfere on the ground that they view a particular expression as unwise or irrational.

*Democratic Party of the United States v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 123-24 (1981) (citations omitted).

This Court has specifically recognized the foregoing, stating, in relevant part:

> Section 807 of the Election Code, 25 P.S. §2837 [] provides, in pertinent part:
>
>> There may be in each county a county committee for each political party within such county, the members of which shall be elected at the spring primary, or appointed, *as the rules of the respective parties within the county may provide*. (Emphasis added.)
>
> The United States Supreme Court has made clear that political parties have a right, inherent in the Constitutional protection of freedom of association under the First and Fourteenth Amendments, to determine the qualifications of those eligible for participation in party politics. *See* [*Democratic Party of the United States*]. And the Supreme Court has recognized the "'particularized legitimate purpose' . . . of preventing inter[-]party raiding, a matter which [bears] on 'the integrity of the electoral process.'" *Storer v. Brown*, 415 U.S. 724, 731 [] (1974) (citation[s] omitted). We read Section 807 of the Election Code to safeguard this important constitutional right by providing that qualifications for local party office may be determined by reasonable party rules.

*In re Nomination Petition of Kielstock*, 473 A.2d 713, 715 (Pa. Cmwlth. 1984).

As outlined above, pursuant to the authority conferred by the Election Code and the Rules and Bylaws of the Republican Party of Pennsylvania, the BCRC has adopted Rule I, Article 3, which permits its Executive Committee to disqualify a committeeman for "neglecting or refusing to attend to the duties of his

13

. . . office." R.R. at 36a.[13] Upon his election to the office of committeeman, Mohn signed the BCRC's Executive Committee Resolution outlining the duties of that office to include helping endorsed Republicans running for office in line with the BCRC's Bylaws, covering the polls on election days, and distributing the sample ballot. *Id.* at 260a. The unrebutted evidence presented at the Executive Committee hearing clearly establishes that Mohn "neglect[ed] or refus[ed] to attend to the duties of his . . . office" by being present at polling places during the April 26, 2016 General Primary Election and handing out sample ballots that were not those endorsed by the BCRC, but were produced by the PAC for which he was the Treasurer. *See id.* at 193a-195a, 199a-200a, 206a-207a, 217a-222a. Following the hearing, the BCRC could properly remove Mohn from office and declare the office vacant on this basis alone pursuant to Rule I, Article 3. *See, e.g.*, *In re Smith*, 516 A.2d 797, 799 (Pa. Cmwlth. 1986), wherein we stated:

> We also find Rule 25[, precluding committeemen from serving in that office if they have supported unendorsed candidates,] to be constitutionally valid as applied to the facts found by the trial court. Although Rule 25 does not contain a time limit restricting prior support of opposing party candidates, we believe that it is to be given a reasonable interpretation. Because the acts complained of in this matter took place in the preceding municipal election, when the candidates were Democratic Committee office-holders, we find no unreasonable enforcement.

Accordingly, we find no unreasonable enforcement of Rule I, Article 3 compelling judicial intervention based on the substantial unrebutted evidence demonstrating

---

[13] As indicated above, BCRC's Rule I, Article 3 comports with the requirements of Section 807 of the Election Code in that it is consistent with Rule 11.1 of the Rules and Bylaws of the Republican Party of Pennsylvania. *See supra* n.2.

14

Mohn's violation of the duties of his office as expressed in the BCRC's Executive Committee Resolution.[14]

Moreover, Mohn's reliance on *Bentman*, to purportedly preclude BCRC's disciplinary action in this regard, is misplaced. As the Superior Court has stated:

> The holding in *Bentman* was that the court had jurisdiction to entertain a claim that removal of [the committeemen] pursuant to the [local party rule] violated due process *to the extent that the removal bore a relationship to the selection of party nominees for public office*. Hence, the highly significant qualification to the holding of *Bentman* places the instant case outside of its strict application.

---

[14] As our Supreme Court explained long ago:

> It is quite clear under the law of Pennsylvania that a Court of equity will not intervene unless the remedies provided by the constitution and by-laws of the organization have been exhausted.
>
> The only exceptions to this rule are (1) if the exhaustion of internal remedies would be futile and illusory; (2) if this would under the circumstances in effect be a denial of justice; or (3) if the action taken by the organization violates due process. If any of these conditions exist, exhaustion of internal remedies is not a condition precedent to judicial relief. Such, however, is not the case before us. Plaintiff's own complaint and exhibits indicate that far from denying due process the [organization's] constitution and by-laws afford an opportunity for a fair hearing to an aggrieved party.

*Durso v. Philadelphia Musical Society, Local No. 77*, 139 A.2d 555, 557-58 (Pa. 1958) (citations omitted). *See also Fox v. Tucker*, 320 A.2d 919, 921 (Pa. Cmwlth. 1974) (holding that the judiciary "should not and may not interfere in the determinations of an association, including this political party, until the available internal remedies have been exhausted").

15

*Gordon v. Philadelphia County Democratic Executive Committee*, 80 A.3d 464, 469 (Pa. Super. 2013), *overruled on other grounds*, *Mohn v. Bucks County Republican Committee*, 218 A.3d 927 (Pa. Super. 2019) (emphasis in original). Likewise, in the instant matter, the record demonstrates that Mohn's removal from office is in no way related to the BCRC's present selection of party nominees for public office, thereby distinguishing this case from *Bentman* as well.[15]

---

[15] Specifically, the transcript of the trial court argument states, in relevant part:

> [MOHN'S COUNSEL]: Your Honor, I believe what you're getting at is that the officials in *Bentman*, there actually were vacancies in a judicial office.
>
> THE COURT: And they were running?
>
> [MOHN'S COUNSEL]: Correct.
>
> THE COURT: Okay. Does that make a difference that one time we're talking about an actual election that the public is involved in and the other time we're talking about the rules of a group, a party; does that make an important difference to give me jurisdiction or not?
>
> [MOHN'S COUNSEL]: No, your Honor, it does not make a difference. This Court does not have to wait for there to be a vacancy in a political office and then have Mohn file an action for mandamus to be replaced as a committeeman so he can participate.
>
> The harm is that . . . the harm, your Honor, is that he is not in his position to perform this duty if the duty would need to be performed.
>
> THE COURT: What duty?
>
> [MOHN'S COUNSEL]: To participate in the selection of candidates for a vacant political office.

**(Footnote continued on next page…)**

16

Accordingly, the trial court's order is affirmed.

---

MICHAEL H. WOJCIK, Judge

Judge Brobson did not participate in the decision of this case.
Judge Covey did not participate in the decision of this case.
Judge Fizzano Cannon did not participate in the decision of this case.

---

**(continued…)**

THE COURT: Okay. Is there something pending presently? Is this a hypothetical case? Is this just, like, if something happens, then he's not going to be allowed to participate; therefore tell him he's allowed to participate now?

It sounds like to me there's no case here the way you're phrasing it. There's nothing actionable.

R.R. at 652a-653a.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Daniel Mohn, Chad Wallace and Irene Silvius | : <br> : <br> : |
| v. | : No. 24 C.D. 2018 <br> : |
| Bucks County Republican Committee | : <br> : <br> : |
| Appeal of: Daniel Mohn | : <br> : |

## **O R D E R**

AND NOW, this 6th day of March, 2020, the order of the Bucks County Court of Common Pleas dated December 14, 2017, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge

Daniel Mohn, Chad Wallace        :
and Irene Silvius               :
                                :
                                :    No. 24 C.D. 2018
             v.                  :
                                :    Argued: December 12, 2019
Bucks County                   :
Republican Committee        :
                                :
Appeal of: Daniel Mohn        :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## *OPINION NOT REPORTED*

CONCURRING/DISSENTING OPINION
BY JUDGE McCULLOUGH                          FILED: March 6, 2020


The independence of political party committees is well established and has been traditionally recognized by the courts as the basis for not interfering with intra-party committee matters. While intra-party political matters clearly remain within the domain of the party committee itself, this case presents the unique factual situation which gave rise to the Constitutional implications addressed by the Pennsylvania Supreme Court in *Bentman v. Seventh Ward Democratic Executive Committee*, 218 A.2d 261 (Pa. 1966), *i.e.*, whether removal of committee members for activities undertaken prior to their election constitutes state action.[1]

---

[1] In the May 2014 primary election, a majority of the public's voters who belong to the Republican Party in Daniel Mohn's election district elected him to serve as a committeeman on the Bucks County Republican Committee (Committee or County Committee) to a two-year term.

Clearly and foremost, the constitutional precept of freedom of association has been the bulwark of political committee independence. It is the parameters of this independence that were examined by the Pennsylvania Supreme

---

On August 23, 2014, Mohn signed the Committee People Resolution, which outlined the duties of a committeeperson. "Two relevant duties include (1) helping to endorse Republicans running for office in accordance with the Committee['s] [b]y-[l]aws and (2) to cover polls on election days, and to distribute the sample ballot." (Trial court op. at 2.) According to Rule I, Article 3 of the Rules of the Republican Party of Bucks County Pennsylvania (the Committee Rule), "[w]henever it shall appear a [committee]person . . . **is neglecting or refusing to attend to [his] duties** . . . he [] shall be disqualified and his membership or office shall be declared vacant . . . ." (Reproduced Record (R.R.) at 36a) (emphasis added). Mohn was subsequently elected in the April 2016 primary for another term as a committeeman on the Committee for a term effective June 6, 2016, until June 4, 2018. (R.R. at 37a.)

"Following the April 26, 2016 election, members of the [Bucks County Republican Party] filed ethics complaints with the [Committee] regarding Mohn's actions during the April 2016 election." (Trial court op. at 2.) On May 18, 2016, a letter was sent to Mohn from the Ethics Committee and a hearing was held on August 11, 2016, on the charges before the Executive Committee, which is a special body elected by the members of the County Committee. *See* R.R. at 39a. Ultimately, by letter dated September 12, 2016, the Executive Committee notified Mohn that he was removed from his 2016-2018 position as a committeeperson for activities conducted during his 2014-2016 term. (R.R. at 36a.) In essence, six months into his 2016-2018 term Mohn was removed for the 2014-2016 term activities.

Mohn was reelected in the April 26, 2016 primary election to a second two-year term (2016-2018). Therefore, the decision of the Executive Committee to oust Mohn from his position as an elected member of the **Committee effectively nullified the results of an election, based upon conduct that Mohn committed in the term prior to his reelection** and the commencement of his second term. In other words, the Executive Committee acted retroactively, disqualifying Mohn from serving his second term because he committed conduct that could potentially serve as a sufficient justification to remove him during his first term.

Mohn filed a declaratory judgment action. The Bucks County Court of Common Pleas (trial court) concluded that it had no authority to "intervene in intra[-]party political association matters regarding the removal of an elected committeeperson" and granted summary judgment in favor of the County Committee. (Trial court op. at 1.) On appeal, Mohn argues that the trial court's ruling clearly contradicts the underlying tenets, foundational premises, and holding in *Bentman.*

Court in *Bentman.* The Court recognized the "reluctance of courts in the past to interfere in and to entertain litigation dealing with the internal organization or management of any private entity." *Bentman*, 218 A.2d at 262. Issued in 1966, *Bentman* is a landmark decision wherein our Supreme Court recognized its prior case law strictly adhering to the belief "that courts will not interfere with the actions and internal organization of a political party" because "officers of a political party are private, not public, officers" and "[p]olitical parties . . . must govern themselves by party law." *Id.* at 263-64 (internal citation omitted). Instead, acknowledging the additions and alterations to the Pennsylvania Election Code (Election Code),[2] "the extension in recent years of the concept of 'state action' under the 14th Amendment," *Bentman*, 218 A.2d at 266, and the proverbial "changing of the times," the *Bentman* court explained:

> Today, [] the relationship between political parties, the government and the public has become such that, in many areas, the public interest is not only *directly* affected by political parties but such parties actually perform *public* functions imposed upon them by law. **Insofar as a political party performs statutorily[]imposed public functions and to the extent that its actions constitute state action, the internal organization of such political party is a matter of such concern to the public as to make it subject to constitutional limitations and judicial restraint. When the internal organization of a political party directly affects its performance of such public function then not only may the judiciary intervene [] it must intervene.**

*Id.* (bold emphasis added.)

On a substantive level, the facts contained in *Bentman* remarkably mimic those presented in this case. In *Bentman*, on April 28, 1964, at a primary

---

[2] Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §§2600-3591.

election, two individuals were elected to serve as committeemen on the Democratic Executive Committee of the 7th Ward in Philadelphia. Subsequently, on August 10, 1964, the committeemen were given written notice that the Executive Committee would meet two days later to vote upon their removal as committeemen. The basis for the removal was that the committeemen had "failed to act in harmony with the Executive Committee," *id.* at 263, specifically because they "had supported and worked for the nomination of a candidate for the Democratic nomination for the United States Senate who had not been endorsed by the Democratic organization of Philadelphia." *Id.* at n.1. However, as the Supreme Court pointed out, "[t]he alleged disloyalty took place at a time when [the individuals] were not party committeemen." *Id.*

The committeemen in *Bentman* commenced a mandamus action, claiming their removal was without cause and violated constitutional due process. The court of common pleas granted the Executive Committee's preliminary objections, holding that it lacked jurisdiction to interfere with the internal operations of a political party because the party was a private organization performing private action. Our Supreme Court reversed. In doing so, the Supreme Court discussed the nature and statutory role of a political party committee and judicial oversight of that committee when it removes a member, stating that

> **[t]he challenge in this action is to the right of a party committee to refuse recognition of membership on such committee to persons who have been lawfully elected to such membership by a majority of the qualified party electors**. Membership on such committee . . . is an important right and privilege not only to the person elected but also to the voters who elected such person to act as their representative on the committee. **Membership on that committee carries with it the right to participate in selection of the political body which,**

**under the legislative direction, in certain instances, selects the party nominees for public office, an activity clearly constituting state action under the 14th Amendment. Deprivation of such membership and the concomitant right of participation in the selection of public officers bears such a *direct* and *substantial* relationship to the electoral process as to be a matter of judicial concern; only by the intervention of the courts can the constitutional limitations on the exercise of state action be safeguarded**.

*Id.* at 269 (bold emphasis added).

The Supreme Court continued to explain why an elected committeeperson engages in state action when he/she has a duty and obligation to elect others to a political position, saying:

When these [political party] officials participate in what is a part of the state's election machinery, they are election officers of the state *de facto* if not *de jure*, and as such must observe the limitations of the Constitution. Having undertaken to perform an important function relating to the exercise of sovereignty by the people, they may not violate the fundamental principles laid down by the Constitution for its exercise.

*Id.* at 269 (quoting *Rice v. Elmore*, 165 F.2d 387, 391 (4th Cir. 1947)).

In *Bentman*, our Supreme Court further commented on how the citizens' fundamental right to vote and place an individual in office to represent them is severely jeopardized, if not infringed, in circumstances remarkably similar to those present here:

**The instant controversy, intra-party in nature, presents a basic and fundamental issue in the democratic process and government by representation: whether the electors of a political party have a right, cognizable in a court of law, to choose whom they will to represent them in their party's organization and councils?** [The committeemen], availing themselves of the electoral

machinery provided by law for such purpose, received a plurality of the votes cast by members of their own party, in their respective districts, for the party offices of party committeemen to represent such party electors in the party organization and, specifically, in the Executive Committee; **the Executive Committee removed them and refused to accord recognition to them as the chosen representatives of the majority of the party electorate in their districts** . . . . **The Executive Committee, by its action, ha[d] ignored the fact that these two persons[,] by a majority of the party electors were chosen to represent them, has rendered the electoral process a nullity and a farce [and] has denied the majority of the party electors the right to be represented by persons of their choice** . . . .

*Id.* at 266.

Against the specific backdrop that committeepersons had been removed for actions taken prior to their election, the Supreme Court also rejected the argument of the Executive Committee, which is the same argument relied upon by the trial court in this case, *i.e.*, that it had the authority under section 812 of the Election Code[3] to remove the committeepersons. In this regard, the Supreme Court stated that if it "construe[d] the language of [section 812]—**'control, direction and supervision'**—to mean that the Executive Committee thereby is given the authority to refuse recognition to the choice of the party electors in the selection of party committeemen and to refuse to allow them to act as party committeemen," then the court would "reach a result [that is] **patently absurd and unreasonable**," *i.e.*, the Executive Committee would be allowed "**to nullify and ignore, without legal cause, the results of [the] election and selection of party committeemen**." *Bentman*, 218 A.2d at 267 (emphasis added). The Supreme Court then concluded

---

[3] This section states that "[w]hen acting in the capacity of a political committee, such duly elected or appointed members shall be subject to the control, direction and supervision of the political committee of which they are members." 25 P.S. §2842.

that its reading of the words "control, direction and supervision" in the context of the Election Code as a whole establishes that

> **[t]he dominant idea pervading the entire statute is the absolute assurance to the citizen that his wish as to the conduct of the affairs of his party may be expressed through his ballot**, and thus given effect, whether it be in accord with the wishes of the leaders of his party or not, and that thus shall be put in effective operation, in the primaries, the underlying principle of democracy, which makes the will of an unfettered majority controlling. **In other words, the scheme is to permit the voters to construct the organization from the bottom upwards, instead of permitting leaders to construct it from the top downwards**.

*Id.* at 267 (quoting *People ex rel. Coffey v. Democratic General Committee*, 58 N.E. 124, 126 (N.Y. Ct. App. 1900)).

From this line of reasoning, the Supreme Court in *Bentman* departed with the case law from yore in unequivocal words:

> Inasmuch as the legislature has seen fit to impose on political party organization certain duties which bear a *direct* and *substantial* relationship to the selection of public officials by the electoral process **the complete privacy in nature of party organization recognized by our courts in the past no longer exists.** The assumption of such obligations by party organizations has marked the entry by such party organizations into an area of **public activity which renders their activities in such area amenable to judicial supervision.**

*Id.* at 269 (emphasis added).

Applying *Bentman* here, to conclude that the trial court in this case did not possess jurisdiction to entertain Mohn's declaratory judgment claims would ignore the Court's entire discourse regarding Constitutional limitations on state action. The majority asserts that *Bentman* is inapplicable because, in that case, the

committeepersons were removed at a time when the committee was in the process of selecting an individual to fill a vacancy in a political office, while there was no such vacancy pending here. (Maj. slip op. at 15 & n.15.) However, such a narrow reading of *Bentman* renders its analysis superfluous.

As *Bentman* stated, committeepersons "are election officers of the state *de facto* if not *de jure*, and as such must observe the limitations of the Constitution." *Id.* at 269 (quoting *Rice*, 165 F.2d at 391). Indeed, if the applicability of *Bentman* depended upon whether there were a vacancy at the time of the removal, as the majority concludes, then a county committee could skirt the Constitution by simply removing the committeeperson when the circumstances and timing are just right. If this is all that it would take to escape the grasp of the Constitution, the result would not only be a grave injustice to the spirit and intent of *Bentman*, but a clear contravention of the Supreme Court's unconditional statement in that case: "Membership on [the] committee carries with it the right . . . [to] select[] the party nominees for public office, an activity clearly constituting state action under the 14th Amendment." *Id.* at 269. Lest there be any doubt, one need only read the sentence in *Bentman* that immediately follows: "Deprivation of such membership and the concomitant right of participation in the selection of public officers bears such a *direct* and *substantial* relationship to the electoral process as to be a matter of judicial concern" and "only by the intervention of the courts can the constitutional limitations on the exercise of state action be safeguarded." *Id.* (emphasis in original).

The Court's holding in *Bentman* was unequivocal that when a committeeperson is **removed by a committee for activity undertaken prior to their election to the committee**, the public's fundamental right to vote and place an individual in office is severely jeopardized, if not infringed, and the entire electoral

process eroded and undermined. This is evidenced, among other ways, by the *Bentman* court's statements that when the committeepersons were removed for supporting unendorsed candidates **before their term of office**, the committee's action in removing the committeepersons had "ignored the fact that these two [committee]persons by a majority of the party electorate were chosen to represent them, ha[d] rendered the electoral process a nullity and a farce, [and] ha[d] denied the majority of the party electors the right to be represented by persons of their choice in the party councils." *Id.* at 266.

Where, as here, a committee removes a committeeperson for conduct that occurred before the committeeperson was duly elected (or reelected) to the term of the political position, *Bentman* would dictate that this be regarded as state action because it infringes upon the fundamental right to vote and its corollary rights.

In fact, this interpretation of *Bentman* has essentially been adopted by this Court, when we described *Bentman* as a case where "**[o]ur Supreme Court held that protection of the rights of the electors who had voted the ousted committeemen into office required that they could not be removed from that office for activity engaged in prior to assuming office**." *In re Nomination Petitions of Kielstock*, 473 A.2d 713, 716 (Pa. Cmwlth. 1984). There does not appear to be any principled basis upon which to conclude that the Committee did not engage in state action simply because Mohn committed his alleged offensive conduct while serving as a committeeperson during the term that preceded the term in which he was removed. In short, under the precepts of *Bentman,* when the citizens reelected Mohn for another term, they reasserted their will and the will of that of the majority

PAM-9

of Republican voters in Mohn's district.[4]  Ultimately, *In re Nomination Petitions of Kielstock* actually supports Mohn's position that *Bentman* is controlling authority in this matter for that case's own discussion of *Bentman* establishes that Mohn's situation is factually and legally indistinguishable from those of the committeepersons in *Bentman,* where the court of common pleas was determined to have jurisdiction.

Nonetheless, relying on the freedom of association inherent in the First Amendment,[5] the majority seemingly concludes that the County Committee's removal here is protected by the Constitution and affirms the trial court on this alternative basis.  (Maj. slip op. at 12 and n.12.)  For support, the majority relies on *In re Nomination Petition of Smith*, 516 A.2d 797 (Pa. Cmwlth. 1986), and *In re Nomination Petitions of Kielstock*.  However, these cases are readily distinguishable.

In both *In re Nomination Petition of Smith* and *In re Nomination Petitions of Kielstock*, this Court concluded that under the party rules for the Democratic Party, the candidates were not eligible to run for office for the Democratic Party because they previously endorsed candidates from the Republican Party.  In striking the candidates' nomination petitions for office, we upheld the party rules on the ground that, pursuant to the freedom of association, "the Democratic Party ha[d] a right . . . to protect its identity as an association by excluding from the field of choice for party office, nominees who have demonstrated allegiance to opposition candidates."  *In re Nomination Petitions of Kielstock*, 473 A.2d at 716. This Court differentiated the party rules from the rule in *Bentman* for two reasons.

---

[4]  The County Committee rule, (*i.e*., ". . . *is* neglecting or refusing . . ."), is noted in this regard.

[5] U.S. Const. amend. 1.

PAM-10

First, the latter rule, *i.e.*, the *Bentman* rule, permitted the "ouster of officers already elected" but the former related "to the eligibility of the candidates to run." *In re Nomination Petitions of Kielstock*, 473 A.2d at 716. Second, the latter rule disqualified a Democratic officeholder because he "merely [] support[ed] a Democratic candidate in the primary [who was] not endorsed," while the former rule was used to declare Democratic candidates ineligible because they provided "active support for the election of the opposition party candidates[, *i.e.*, the Republican Party,] in the general election." *In re Nomination Petitions of Kielstock*, 473 A.2d at 716.

Here, a committeeman was removed from office for conduct that he committed prior to his reelection, and the Committee Rule, stated in present tense— "*is* neglecting or refusing to attend to [his] duties"—was used as the basis to oust him after he was duly elected as a committeeperson. On its face, the Committee Rule has nothing to do with the *eligibility* to run for office, like the rules in the cases relied upon by the majority, but, rather, pertains to the *removal* from office, which is identical to the rule at issue in *Bentman*. Moreover, just like the committeepersons in *Bentman*, Mohn, a member of the Republican Party, supported unendorsed candidates from the same party. In contrast, the rules in both *In re Nomination Petition of Smith* and *In re Nomination Petitions of Kielstock* involved the candidates' endorsement of an opposing party. Consequently, the associational rights of the Democratic Party in *In re Nomination Petition of Smith* and *In re Nomination Petitions of Kielstock* were exceptionally weighty because they maintained the line of demarcation that existed between individuals and associations that were registered with the Democratic Party and those who were not. *See In re Nomination Petitions of Smith*, 182 A.3d 12, 22 (Pa. Cmwlth. 2018) (single judge

op., McCullough, J.) (discussing "the associational rights of the Republican and Democratic parties to exclude the other party's members from participating in the nomination process").

The line of demarcation noted above does not exist here. Moreover, the associational rights of the County Committee and its interest in enforcing the Committee Rule is questionable because the Committee Rule, on its face, does not appear to apply to the circumstances of this case. Further, "state action" under *Bentman* would allow the Court to assess whether the associational rights of the County Committee, *per se*, unreservedly, and as a matter of law, trump the Constitutional restraints placed on state action and the citizens' right to vote for the representatives of their choice. *See Lynch v. Torquato*, 343 F.2d 370, 372 (3d Cir. 1965) (noting that "the citizen's constitutional right . . . to [] choo[se] . . . who shall be his elected representatives in the conduct of government" is not a matter or legal issue that falls within "the internal management of a political party").[6]

Thus, there is a genuine issue of material fact as to whether "the right of the party electors, as individuals, to choose their representatives" under *Bentman*

---

[6] Further, as a general matter, courts have noted that "[p]rimaries tend to weaken party cohesiveness, alter a party's candidate mix, and change a party's political messages." *Utah Republican Party v. Cox*, 892 F.3d 1066, 1112 (10th Cir. 2018). Thus, when members of a political party play by and follow their own rules, any internal debate and strife surrounding the support and selection of its candidates is part and parcel of a healthy Republic form of government. Open political dialogue is essential to our democracy, and the selection and election process is a time to"[e]xtend the sphere [and] take in a greater variety of [] interests," which, in the end, will "make it less probable that a majority of the whole will have a common motive to invade the rights of other citizens[.]" *Baber v. Dunlap*, 376 F. Supp. 3d 125 (D. Me. 2018) (quoting The Federalist No. 10 (James Madison) (Clinton Rossiter ed., 1961)). As such, in the unique circumstances of this case, and where, as here, a party political committee assumes the role of a state actor, the committee generally does not have a compelling interest in "protecting the integrity of the Party against the Party itself." *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214, 232 (1989).

outweighs "the right of the party as an association to identify the people who constitute the association and to limit the association to those people only." *In re Nomination Petitions of Kielstock*, 473 A.2d at 716. At the very least, the case is not clear and free from doubt, especially considering that the Committee Rule is not written in a manner as to impose "prospective" discipline in the future for past conduct, and the trial court granted summary judgment prematurely. As such, I cannot subscribe to the majority's affirmance of the trial court on an alternative rationale.

In light of the above, I concur with the majority that intra-party political matters remain within the domain of the political party itself, but I cannot ignore the extensive analysis in *Bentman* recognizing the need to observe Constitutional limitations in a proceeding such as the one that occurred here.[7]

_____
PATRICIA A. McCULLOUGH, Judge

---

[7] As a final matter, I would emphasize that nothing herein is intended to suggest that the County Committee could not revise its rules and enact and/or enforce a rule containing express language that would be sufficient to remove a committeeperson in a term succeeding the conduct committed as in this case—or, in other words, a rule declaring that a committeeperson forfeited a future term of office for failing to support endorsed candidates in a previous term. I simply note that there is no such rule at present.

PAM-13